

JERROLD S. JENSEN (#1678)
Assistant Attorney General
MARK L. SHURTLEFF (#4666)
Attorney General
Attorneys For Plaintiff
160 East 300 South, 5th Floor
P.O. Box 140857
Salt Lake City, Utah  84114-0857
Telephone:  (801) 366-0353

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE KING'S ENGLISH, INC., et al.,<br><br>      Plaintiffs<br><br>vs.<br><br>MARK SHURTLEFF, In his official capacity as ATTORNEY GENERAL OF THE STATE OF UTAH, et al.,<br><br>      Defendants. | MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS<br><br><br>Case No. 2:05CV00485<br><br>Judge Dee Benson |

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF PLAINTIFFS' STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    I.    REQUIREMENTS FOR STANDING COMPEL THE DISMISSAL OF
        CERTAIN PLAINTIFFS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        A.    Plaintiffs Who Claim to be Neither ISPs nor Utah-Based Content
              Providers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        B.    Utah-based Content Providers Who Claim Not to Post Any Material
              Harmful to Minors, but "Fear" Their Website Will Be Blocked. . . . . . . 10
    II.    CERTAIN PLAINTIFFS LACK STANDING BECAUSE IT IS "NOT LIKELY"
         THEY WOULD EVER BE PROSECUTED UNDER THE ACT. . . . . . . . . . . 12
    III.    PLAINTIFFS WHO HAVE STANDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# INTRODUCTION

Plaintiffs have filed a facial challenge to HB 260, Amendments Related to Pornographic and Harmful Materials, passed by the Utah State Legislature at the 2005 General Session. Plaintiffs charge that the Act is substantially overbroad and therefore a violation of the First and Fourteenth Amendments to the United States Constitution. Because the Act has delayed implementation dates, it is not currently being enforced. However, for 11 of the 14 plaintiffs, if the Act were being enforced there would be no "credible threat" of prosecution under the Act. Therefore these 11 plaintiffs should be dismissed for a lack of standing.

# ISSUES PRESENTED

The following issues related to standing are presented in this Memorandum:

1.      Whether plaintiffs who are not either Internet service providers (ISPs) or Utah-based Internet content providers have standing to maintain a facial challenge to HB 260.

2.      Whether plaintiffs who merely "fear" – not prosecution – but that their website might be blocked to a specific user, who requested their ISP block certain websites, have standing.

3.      Whether plaintiffs who are Utah-based Internet content providers, but who are "not likely" to ever be prosecuted under the Act, have standing to maintain this action.

# SUMMARY OF THE ACT

In 2003 the United States Supreme Court upheld the Children's Internet Protection Act (CIPA) which required public libraries to use Internet filters as a condition for receipt of federal

subsidies.  <u>United States v. American Library Assn., Inc.</u>, 539 U.S. 194.  In 2004 the United

States Supreme Court extolled the virtues of Internet filtering by citing the COPA[1]

Commission's Report to Congress finding "server-based" filters to be the most effective means

of restricting minors' ability to gain access to harmful material on the Internet.  <u>Ashcroft v.</u>

<u>ACLU</u>, 124 S.Ct. 2783, 2792.

House Bill 260 (attached) is an attempt by the Utah State Legislature to follow the

guidance of the Supreme Court in the above two cited cases.  The underlying principle of the

statute is that, ". . . the Government has an interest in protecting children from potentially

harmful materials." <u>Ginsberg v. New York</u>, 390 U.S. 629, 639 (1968); <u>Reno v. American Civil</u>

<u>Liberties Union</u>, 521 U.S. 844, 874 (1997).

The three primary provisions of HB 260 are as follows:

1.    Internet service providers (ISPs) doing business in Utah are required to make

filtering systems available to Utah consumers, either by employing a server-based filter system

or making a user-based filter system available.  The Act does not require that the filtering system

be activated – only that it be available.  If and when it is to be activated is at the consumer's

discretion. (Utah Code Ann. § 76-10-1231.)

2.    The Act requires the creation of a registry to be maintained by the State of adult

content websites, which the consumer, if he or she so chooses, could request their ISP to block.

---

[1]Child Online Protection Act (COPA).

The blocking of any website by an ISP is, again, only done at the consumer's request. (Utah Code Ann. §§ 67-5-19, 76-10-1232.)

3.   The Act requires the state of Utah to promulgate regulations dealing with labeling, and provides that Utah-based website content providers are to label their website if it contains material which may be harmful to minors in conformance with the regulations. (Utah Code Ann. § 76-10-1233.)

Thus, failure to comply with the Act imposes criminal penalties only upon Internet service providers doing business in Utah, and Utah-based Internet content providers posting material which may be harmful to minors.

In determining the standard to be applied for filtering and blocking, the statute incorporates the ubiquitous "harmful to minors" standard (Utah Code Ann. § 76-10-1201(4)). The Utah statute was modeled after a New York statute upheld against a First Amendment challenge by the Supreme Court in <u>Ginsberg</u>, 390 U.S. 629, and has been upheld against a constitutional challenge by the Utah Supreme Court in <u>State v. Burke</u>, 675 P.2d 1198 (1984).

In their Complaint, Plaintiffs repeatedly note that nine states, as well as Congress, have passed laws attempting to deal with the issue of pornography on the Internet and that all statutes

have been declared unconstitutional or enjoined.[2]  That is true.  But then plaintiffs say that those

statutes are "similar" to the Utah Act.  That is not true.  While all the other state statutes have

their differences, in general, they have imposed criminal penalties on commercial Website

content providers who post material on the Internet that is "harmful to minors," but provide an

affirmative defense to those who restrict access to the web site by requiring the use of a credit

card or an age verification system.[3]  The courts have been uniform in declaring such restrictions

an unacceptable burden to adult communications.  The U. S. Supreme Court declared such

restrictions an unacceptable burden to adult communications because a less restrictive means

was available to restrict minors' access to Internet websites, i.e, filtering software.  Ashcroft, 124

S.Ct. at 2792.

The Utah statute requires an ISP to either use a "generally accepted and commercially

reasonable method of filtering" (Utah Code Ann. §§ 76-10-1231(1)(b) and 1232(1)(b)), or

provide "software for contemporaneous installation on the consumer's computer that blocks, in

---

[2]Southeast Booksellers Association v. McMaster, 371 F. Supp. 2d 773 (D.S.C., 2005);
Center for Democracy & Technology v. Pappert, 337 F. Supp. 2d 606 (E.D.Pa. 2004);  PSINet,
Inc. v. Chapman, 362 F.3d 227 (4th Cir. 2004) ACLU v. Goddard, Civ. 00-0505 TUC-AM (D.
Ariz. Aug. 11, 2004) American Booksellers Foundation v. Dean, 342 F.3d 96 (2d Cir. 2003);
State v. Weidner, 611 N.W. 2d 684 (Wisc. 2004);  ACLU v. Johnson, 194 F.3d 1149 (10th Cir.
1999) (New Cyberspace Communications, Inc. v. Engler, 55 F. Supp. 2d 737 (E.D. Mich. 1999)
American Library Association v. Pataki, 969 F. Supp. 160 (S.D.N.Y. 1997).

[3]Except for the Pennsylvania statute, which required ISPs to block access to web sites
state-wide displaying child pornography.  While the Pennsylvania act was the first attempt by a
state to impose liability on an ISP, it is still fundamentally different than the Utah Act.  See
Center for Democracy & Technology v. Pappert, 337 F. Supp. 2d 606 (2004).

an easy-to-enable and commercially reasonable manner, receipt of material harmful to minors."
(Utah Code Ann. § 76-10-1231(3)(a)(ii)). In either case, activation of the filtering system is at
the consumer's discretion. The Utah statute requires no credit card use or age verification
system. The age verification system is an option, but it is not required.

Therefore, under the Utah Act, the user who chooses to access pornography or material
harmful to minors is free to do so without any restrictions whatsoever. The Internet is free, open
and available to any user under the Act. If the user requests a filtering system or blocking
mechanism activated by his or her ISP, then, and only then, does access to certain websites
become restricted. Rather than restrict access to all suspect websites, making the user jump
through a series of hoops to gain access – as the other states and Congress have done – the Utah
Act enables the user to restrict access to the internet, if he or she so requests and then even that
request is subject to change at the user's discretion.

As a practical matter, filtering systems are presently used by most national Internet
service providers and are structured so that family members can have different levels of filtering
based upon whatever criteria the parents determine. For example, the parents use of the Internet
can be totally unrestricted, whereas one filtering screen is available for a pre-teen, and another
filtering screen available for a teenager. Most national Internet service providers currently
provide such a filtering system.[4]

---

[4]Note that AOL, MSN, Earthlink, Comcast, etc. are not plaintiffs in this lawsuit.

The Act has delayed implementation dates:  (1) Filtering requirements for ISPs become effective January 1, 2006, (2) Blocking and labeling requirements are not effective until May 1, 2006. (§ 11.)

## SUMMARY OF PLAINTIFFS' STATUS

Based upon the facts alleged in Plaintiffs' Complaint, the 14 plaintiffs fall into four categories:

1.  Out-of-state content providers.

2.  Utah-based content providers who claim not to have any material harmful to minors on their web site, but are "fearful" that the blocking of one website may block their website.

3.  Utah-based content providers who claim to sell material which may be classified as harmful to minors.

4.  Internet service providers.

## SUMMARY OF ARGUMENT

Article III of the Constitution requires a plaintiff to present an actual "case or controversy."  U.S. CONST. art. III §2.  Among other things, the Constitution's case or controversy requirement requires a plaintiff to show that he or she has standing to bring suit. The "gist of the question of standing" is that plaintiff must allege a "personal stake in the outcome of the controversy."  Flast v. Cohen, 392 U.S. 83, 99 (1968) (quoting Baker v. Carr, 369 U. S. 186,

204 (1962)); see also Schaffer v. Clinton, 240 F.3d 878, 882 (10th Cir. 2001). None of the 11 plaintiffs identified herein have a "personal stake in the outcome of the controversy" and therefore should be dismissed from the case for a lack of standing.

## ARGUMENT

## I. REQUIREMENTS FOR STANDING COMPEL THE DISMISSAL OF CERTAIN PLAINTIFFS.

"Standing is a threshold requirement, determined with reference to both constitutional limitations on federal court jurisdiction in Article III and prudential limitations on the exercise of that jurisdiction." Baca v. King, 92 F.3d 1031, 1035 (10th Cir. 1996) (citing Warth v. Seldin, 422 U.S. 490, 498 (1975)). To meet this requirement, the Supreme Court has said that a plaintiff must demonstrate, at an "irreducible constitutional minimum," that: (1) he or she has suffered an injury-in-fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Ward v. Utah, 321 F.3d 1263, 1266 (10th Cir. 2003). These three elements of standing are "an indispensable part of plaintiffs' case," and thus, the plaintiff must support each element "with a manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561.

The first prong of the Lujan standing test requires that the plaintiff demonstrate that he has suffered an injury-in-fact through "a factual showing of perceptible harm," Lujan, 504 U.S. at 566; Bear Lodge Multiple Use Ass'n v. Babbitt, 175 F.3d 814, 821 (10th Cir. 1999), that must

be concrete rather than hypothetical. <u>Horstkoetter v. Department of Public Safety</u>, 159 F.3d 1265, 1278 (10th Cir. 1998); <u>see also</u> <u>Bennett v. Spear</u>, 520 U.S. 154 (1997); <u>Byers v. City of Albuquerque</u>, 150 F.3d 1271 (10th Cir. 1998). "Injury-in-fact must be concrete and imminent. Hypothetical or conjectural harm is not sufficient. When a law does not apply to a party, that party has suffered no invasion of a legally protected interest and may not question the law's constitutionality." <u>Essence Inc. v. City of Federal Heights</u>, 285 F.3d 1272, 1281 (10th Cir. 2002) (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 504 (1975)).

Even where First Amendment rights justify a relaxation of the prudential limitations on standing to permit a facial challenge to a statute, a plaintiff "must nonetheless establish an injury-in-fact sufficient to satisfy Article III's case-or-controversy requirement." <u>Ward</u>, 321 F.3d at 1267. "Allegations of a subjective 'chill' . . . are not an adequate substitute for a claim of specific present objective harm or a threat of a specific future harm." <u>Laird v. Tatum</u>, 408 U.S. 1, 13-14 (1972).

## A.    Plaintiffs Who Claim to be Neither ISPs nor Utah-Based Content Providers.

Based upon the information contained in Plaintiff's Complaint, the following plaintiffs are neither ISPs nor Utah-based content providers – the only two categories of persons subject to criminal prosecution under the Act – and therefore should be dismissed:

1.    <u>The Sexual Health Network, Inc.</u>:  This plaintiff claims to be a "small, Internet-based company incorporated in the state of Connecticut," that distributes material which may be harmful to minors. Cmplt. ¶¶ 26, 153 - 159. Inasmuch as this plaintiff claims to be  neither an

ISP nor a Utah-based Internet content provider, it is not subject to the Act. Under no conceivable interpretation of the Act can an out-of-state content provider be prosecuted under this Act. Therefore this plaintiff should be dismissed for lack of standing..

2.    Comic Book Legal Defense Fund:  This plaintiff is a non-profit corporation with its principle place of business in Massachusetts, representing "over 1,000 comic book authors, artists, retailers, distributors, publishers, librarians located in Utah." Cmplt. ¶¶ 31, 167. Inasmuch as this plaintiff claims to neither be an ISP nor a Utah-based content provider, nor represent an ISP or Utah-based content provider, it is not subject to the Act. Therefore, this plaintiff should be dismissed for lack of standing.

3.    Publishers Marketing Association:  PMA is a non-profit trade association located in California, representing more than 4,200 publishers across the United States and Canada. It claims 30 of its members are located in Utah, but makes no claim that any of those 30 members are Utah-based content providers. Cmplt. ¶¶ 33,171 -173. This Plaintiff does not claim to be either an Internet service provider or to be a Utah-based content provider, nor does it claim that any of its Utah members are Utah-based content providers. Therefore, the strictures of this Act do not apply to this plaintiff or its members, and it should be dismissed as well.

4.    Association of American Publishers, Inc.:  This plaintiff is a national association of the United States book publishing industry. Its approximately 300 members include most of the major commercial book publishers in the Unites States. Its members publish hardcover and paperback books and "also produce computer software and electronic products and services."

This plaintiff is incorporated in New York and has its principle place of business in New York City and in the District of Columbia. Cmplt. ¶¶ 30, 165 - 166. This plaintiff does not claim to be an ISP nor to have any members who are Utah-based content providers. Therefore, neither the association nor its members, based upon the information provided in the Complaint, could be prosecuted under the Act. Therefore, this plaintiff should also be dismissed for lack of standing.

5.     <u>Freedom to Read Foundation</u>: FTRF is a non-profit membership organization established by the American Library Association to promote and defend First Amendment Rights. It is incorporated in Illinois and has its principle place of in Chicago. FTRF claims that it "sues on its own behalf, on behalf of its members who use online computer communication systems, and on behalf of the patrons of its member libraries." Cmplt. ¶ 32. Nowhere in the Complaint, however, does FTRF claim that it has Utah members, nor are any websites listed in the Complaint. Cmplt. ¶¶ 168 - 170. Since it is not an ISP and makes no claim to have members who are Utah-based content providers, this plaintiff also lacks standing and should be dismissed.

**B.     Utah-based Content Providers Who Claim Not to Post Any Material Harmful to Minors, but "Fear" Their Website Will Be Blocked.**

Based upon the information contained in the Complaint, the following plaintiffs are Utah-based content providers who do not post material on their website which would be considered harmful to minors, but "fear" that the blocking of one website by an ISP may block their website.

First, whether an innocent website will ever be blocked at this point is purely speculative and unknowable. In order to determine whether an innocent website would be blocked under the

Act requires knowing: (1) what websites will be listed on the adult content registry (which has not yet been compiled), (2) whether the ISP will block by an IP address (other means are technologically available), and, (3) whether any customers will request blocking of a site containing the same IP address as the innocent web site. Secondly, any blocking of websites by an ISP is done at the consumer's request. In the event an innocent website is blocked, it is only blocked as to the requesting customer – not to other Internet users. If and when such a situation arose, the customer – knowing that they cannot access a particular website – could simply solve the problem by requesting the ISP to unblock the innocent website. Thirdly, the blocking of an innocent web site does not block the owner of the innocent website from receiving or sending protected speech otherwise available on the Internet, it only blocks access to the innocent web site by the customer who requested the blockage.[5]

For someone to say that they "fear" that their website will be blocked by this Act does not grant them standing under any conceivable scenario. Anticipation, fervor of advocacy, speculation, or even fear is not enough by itself to establish standing. See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 485-86 (1982). Therefore, the following plaintiffs should also be dismissed from the Complaint:

    1.    W. Andrew McCullough: Mr. McCullough is a Utah resident who maintains a

---

[5]The Act contains an informed choice provision, requiring the ISP at the time of the consumer's request for blockage, to notify the consumer that such blockage "may also result in blocking material that is not harmful to minors." Utah Code Ann. § 76-10-1232(1)(ii).

website for a prior political campaign in Utah. While the website is accessible, it has not been updated since his run for political office in 2004. He claims the website "contains no content that would be considered harmful to minors," but "fears that his website will be blocked as a result of actions by ISPs to comply with the Act." Cmplt. ¶¶ 23, 148. Mr. McCullough's "fear" that his site will be blocked is unrealistic. Were his site to be blocked to a specific user, it would have been because the user requested blockage of an offensive site, who, when he discovered that Mr. McCullough's website had been blocked could request the ISP to unblock it.

      2.    <u>Utah Progressive Network</u>: UPNet is a coalition of organizations and individuals in Utah, which operates a website. "This website contains no content that would be considered 'harmful to minors.' " Rather, UPNet "fears" that its website would be blocked as a result of actions by the ISPs to comply with the Act. Cmplt. ¶¶ 27, 160. UPNet's "fear" that their site will be blocked is also unrealistic. Were their site to be blocked to a specific user, it would have been because the user requested blockage of an offensive site, who, when he discovered that UPNet's website had been blocked, could request the ISP to unblock it.

## II.    CERTAIN PLAINTIFFS LACK STANDING BECAUSE IT IS "NOT LIKELY" THEY WOULD EVER BE PROSECUTED UNDER THE ACT.

      Defendants acknowledge that certain of the plaintiffs herein own "brick and mortar" establishments which sell material which may be deemed harmful to minors (defendants assume that these plaintiffs do not sell such material to minors), and therefore feel a certain sense of foreboding if such material, which they have every right to sell, is displayed on their web site.

However, having viewed the websites of these plaintiffs, defendants are totally perplexed as to why these plaintiffs would even be concerned with a violation of the Act. Listing the title of a book which may contain material harmful to minors on a website does not constitute a breach of the harmful to minors standard. Even describing the book, such as the ones identified in ¶ 141 of the Complaint, does not automatically trigger sanctions of the harmful to minors standard. While a battle line has to be drawn somewhere, these plaintiffs are not even on the field of engagement, let alone close enough to see the "whites of their eyes."

Fortunately, or unfortunately as the case may be, the two defendants with prosecutorial jurisdiction over The King's English and Sam Weller's Bookstores (both of which are located in Salt Lake County) are quite familiar with these bookstores.[6] Being familiar with the bookstores and having viewed the websites, Defendants Shurtleff and Yocom (the Utah Attorney General and the Salt Lake County District Attorney) cannot imagine those business establishments posting material on their website which would run afoul of the subject Act and as a result are willing to submit the accompanying Affidavit stating that these defendants are not only "not likely" to ever be prosecuted under the Act, they are extremely unlikely to ever be prosecuted.

In <u>Faustin v. City and County of Denver, Colorado</u>, 268 F.3d 942 (2001) the 10th Circuit denied standing to a plaintiff facially challenging a statute in light of the prosecutor's written determination that the plaintiff was not violating the subject ordinance and it was "not likely"

---

[6]As patrons, not as prosecutors.

she would ever be charged with violating it. Id. at 948. In that same vein, Defendants Shurtleff and Yocom signed the accompanying Affidavit for the following plaintiffs: The King's English, Sam Weller's Zion Book Store, American Booksellers Foundation for Free Expression (ABFFE), and the American Civil Liberties Union of Utah.

American Booksellers Foundation for Free Expression has been included in this category because it claims its members are not adult bookstores but that some of its members "have their own web pages." Cmplt. ¶ 161. Since ABFFE has not identified any of its Utah members, defendants assume its members to be similar in nature to The King's English and Sam Weller's bookstores. Given that assumption, Defendants Shurtleff and Yocom cannot conceive of prosecuting any such bookstore for postings on its Internet website under the Act.

Since plaintiff ACLU of Utah does not claim in its Complaint to represent Utah-based Internet content providers, it also has been placed in this category. It claims that it "sues on its own behalf, and on behalf of its members who use online computer communication systems." Cmplt. ¶ 29. There is nothing on the ACLU of Utah website which would cause defendants to believe there would ever be any reason to prosecute the ACLU under this Act (see Affidavit ¶¶ 8 - 9) and users of online computer communications systems are not subject to prosecution under the Act. The only users who will be affected by the Act are users who request an ISP to either activate a filter system or block certain websites.

In short, there is "no credible threat" that these plaintiffs and the members they represent

will ever be subject to prosecution under this Act. Therefore, they should be dismissed for lack of standing.

## III.    PLAINTIFFS WHO HAVE STANDING

As a result of the above, there are only three plaintiffs for whom there is a "credible threat" of prosecution:

1.    <u>Computer Solutions International, Inc., and Mountain Wireless Utah, LLC</u>:  As Internet service providers, there is no question these two plaintiffs will be subject to the provisions of the Act regarding filtering and blocking by ISPs.

2.    <u>Nathan Florence</u>: Mr. Florence's current website contains one painting which may be considered harmful to minors (full frontal nudity).  Based upon paintings depicting full frontal nudity, Mr. Florence may be subject to the labeling requirements of the Act as a Utah-based content provider.

### CONCLUSION

For the above stated reasons, the following plaintiffs should be dismissed from this cause of action for a lack of standing:  The King's English, Inc.; Sam Weller's Zion Bookstore; W. Andrew McCullough; The Sexual Health Network, Inc.; Utah Progressive Network Education Fund, Inc.; American Booksellers Foundation for Free Expression; American Civil Liberties

Union of Utah; Association of American Publishers, Inc.; Comic Book Legal Defense Fund;

Freedom to Read Foundation; and Publishers Marketing Association.

DATED this **23RD** day of August, 2005

> MARK L. SHURTLEFF
> Attorney General
>
> JERROLD S. JENSEN
> Assistant Attorney General

**CERTIFICATE OF SERVICE**

I do hereby certify that a true and correct copy of the foregoing MEMORANDUM IN

SUPPORT OF DEFENDANTS' MOTION TO DISMISS was served by mailing the same, first

class postage prepaid, this _23_ day of August, 2005, to the following:

Wesley D. Felix
Bendinger, Crockett, Peterson, Greenwood & Casey
170 South Main, Suite 400
Salt Lake City, UT 84101

Michael A. Bamberger
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, New York 10020

John B. Morris, Jr.
Center for Democracy & Technology
1634 Eye Street, NW #1100
Washington, DC 20006

Margaret D. Plane
ACLU of Utah Foundation Inc.
355 North 300 West
Salt Lake City, UT 84103

_____
Secretary

# AMENDMENTS RELATED TO PORNOGRAPHIC
# AND HARMFUL MATERIALS

### 2005 GENERAL SESSION
### STATE OF UTAH

## Chief Sponsor: John Dougall

### Senate Sponsor: Curtis S. Bramble

| | | |
|---|---|---|
| Sheryl L. Allen | Fred R. Hunsaker | Paul Ray |
| Bradley M. Daw | Rebecca D. Lockhart | Aaron Tilton |
| Margaret Dayton | Ronda Rudd Menlove | Peggy Wallace |
| Brent H. Goodfellow | Michael E. Noel | Richard W. Wheeler |
| Gregory H. Hughes | Curtis Oda | |

## LONG TITLE

**General Description:**

This bill addresses pornographic materials and material harmful to minors.

**Highlighted Provisions:**

This bill:

▸ requires the Division of Consumer Protection to make public service announcements;

▸ requires the attorney general to establish and maintain a database, called the adult content registry, of certain Internet sites containing material harmful to minors;

▸ defines terms;

▸ subjects a person dealing in material harmful to minors to criminal liability for certain distributions of material harmful to minors if the person negligently or recklessly fails to determine the proper age of a minor;

▸ increases criminal penalties for distributing and inducing acceptance of pornographic materials;

▸ requires a service provider to prevent certain access to Internet material harmful to minors, if requested by the consumer;

▸ requires the Division of Consumer Protection to test the effectiveness of a service

provider's procedures to block material harmful to minors at least annually;

▸ requires a service provider, under certain circumstances, to block material on the adult content registry;

▸ requires Internet content providers that create or host data in Utah to properly rate the data;

▸ allows the attorney general to seek a civil fine against a service provider that fails to properly block material harmful to minors;

▸ provides criminal penalties for certain violations of the provisions requiring a service provider to block material harmful to minors;

▸ provides a criminal penalty for a content provider's failure to properly rate content; and

▸ makes technical changes.

**Monies Appropriated in this Bill:**

This bill appropriates:

▸ $100,000 from the General Fund to the Division of Consumer Protection, for fiscal year 2005-06 only, for public service announcements;

▸ $50,000 from the General Fund to the Division of Consumer Protection, for fiscal year 2005-06 only, to conduct a research project; and

▸ $100,000 from the General Fund to the attorney general, for fiscal year 2005-06 only, to establish the adult content registry.

**Other Special Clauses:**

This bill provides an effective date.

**Utah Code Sections Affected:**

AMENDS:

**76-10-1204**, as last amended by Chapters 93 and 163, Laws of Utah 1990

**76-10-1205**, as last amended by Chapter 163, Laws of Utah 1990

**76-10-1206**, as last amended by Chapter 53, Laws of Utah 2000

ENACTS:

**13-2-9**, Utah Code Annotated 1953

**67-5-19**, Utah Code Annotated 1953

**76-10-1230**, Utah Code Annotated 1953

**76-10-1231**, Utah Code Annotated 1953

**76-10-1232**, Utah Code Annotated 1953

**76-10-1233**, Utah Code Annotated 1953

*Be it enacted by the Legislature of the state of Utah:*

Section 1.  Section **13-2-9** is enacted to read:

**13-2-9.  Internet -- Consumer education.**

(1)  The Division of Consumer Protection shall, subject to appropriation, contract with a person to make public service announcements advising consumers about the dangers of using the Internet, especially:

(a)  material harmful to minors;

(b)  steps a consumer may take to learn more about the dangers of using the Internet;

(c)  information about how a service provider can help a consumer learn more about the dangers of using the Internet, including the service provider's duties created by this bill; and

(d)  how a consumer can monitor the Internet usage of family members.

(2)  Monies appropriated under Subsection (1) shall be paid by the Division of Consumer Protection to a person only if:

(a)  the person is a nonprofit organization; and

(b)  the person agrees to spend private monies amounting to two times the amount of monies provided by the Division of Consumer Protection during each fiscal year in accordance with Subsection (1).

(3)  In administering any monies appropriated for use under this section, the Division of Consumer Protection shall comply with Title 63, Chapter 56, Utah Procurement Code.

Section 2.  Section **67-5-19** is enacted to read:

**67-5-19.  Adult content registry.**

(1)  As used in this section:

(a)  "Access restricted" means access restricted as defined in Section 76-10-1230.

(b)  "Consumer" means a consumer as defined in Section 76-10-1230.

(c)  "Content provider" means a content provider as defined in Section 76-10-1230.

(d)  "Hosting company" means a hosting company as defined in Section 76-10-1230.

(e)  "Service provider" means a service provider as defined in Section 76-10-1230.

(2)  The attorney general, in consultation with other entities as the attorney general
considers appropriate, shall:

(a)  create a database, called the adult content registry, consisting of a list of content
providers' sites, that shall be based on a Uniform Resource Locator address, domain name, and
Internet Protocol address or a similar addressing system, that:

(i)  are added to the database under Subsection (2)(b); and

(ii)  provide material harmful to minors that is not access restricted;

(b)  add a content provider site to the adult content registry only if the attorney general
determines that the content provider is providing content that contains material harmful to minors
that is not access restricted;

(c)  when the attorney general determines that a content provider site should be placed on
the adult content registry, if the content provider lists e-mail contact information, the attorney
general shall notify the content provider and hosting company, if available, by e-mail:

(i)  that the content provider is providing content that contains material harmful to minors
that is not access restricted;

(ii)  that the attorney general will place the content provider site on the adult content
registry five business days after the notice is sent;

(iii)  that the content provider can avoid being placed on the adult content registry if any
material harmful to minors is access restricted; and

(iv)  of the steps necessary for the content provider or hosting company to apply to be
removed from the adult content registry;

(d) (i)  if notification is required under Subsection (2)(c), place a content provider site on

the adult content registry five business days after the day on which the division makes the required notification; or

(ii) if notification is not required under Subsection (2)(c), place a content provider site on the adult content registry five business days after the day on which the attorney general determines that the content provider should be placed on the adult content registry; and

(e) if requested by a content provider, remove a content provider from the adult content registry within two business days from the day on which the attorney general determines that the content provider no longer provides material harmful to minors that is not access restricted.

(3) The attorney general shall make the adult content registry available for public dissemination in a readily accessible access restricted electronic format.

(4) The attorney general shall establish a system for the reporting of material transmitted to a consumer in violation of Section 76-10-1232.

Section 3. Section **76-10-1204** is amended to read:

**76-10-1204. Distributing pornographic material.**

(1) A person is guilty of distributing pornographic material when he knowingly:

(a) sends or brings any pornographic material into the state with intent to distribute or exhibit it to others;

(b) prepares, publishes, prints, or possesses any pornographic material with intent to distribute or exhibit it to others;

(c) distributes or offers to distribute, exhibits or offers to exhibit any pornographic material to others;

(d) writes, creates, or solicits the publication or advertising of pornographic material;

(e) promotes the distribution or exhibition of material he represents to be pornographic; or

(f) presents or directs a pornographic performance in any public place or any place exposed to public view or participates in that portion of the performance which makes it pornographic.

(2) Each distributing of pornographic material as defined in Subsection (1) is a separate

offense.

(3)  It is a separate offense under this section for:

(a)  each day's exhibition of any pornographic motion picture film; and

(b)  each day in which any pornographic publication is displayed or exhibited in a public place with intent to distribute or exhibit it to others.

[(4)  Each separate offense under this section is a class A misdemeanor punishable by:]

[(a)  a minimum mandatory fine of not less than $100 plus $10 for each article exhibited up to the maximum allowed by law; and]

[(b)  incarceration, without suspension of sentence in any way, for a term of not less than seven days, notwithstanding any provisions of Section 77-18-1.]

[(5)  If a defendant has already been convicted once under this section, each separate further offense]

(4) (a)  An offense under this section is a third degree felony punishable by:

(i)  a minimum mandatory fine of not less than $1,000 plus $10 for each article exhibited up to the maximum allowed by law; and [by]

(ii)  incarceration, without suspension of sentence in any way, for a term of not less than 30 days.

(b)  This Subsection (4) supersedes Section 77-18-1.

(5)  A service provider, as defined in Section 76-10-1230, complies with this section if it complies with Sections 76-10-1231 and 76-10-1232.

Section 4.  Section **76-10-1205** is amended to read:

**76-10-1205.  Inducing acceptance of pornographic material.**

(1)  A person is guilty of inducing acceptance of pornographic material when he knowingly:

(a)  requires or demands as a condition to a sale, allocation, consignment, or delivery for resale of any newspaper, magazine, periodical, book, publication, or other merchandise that the purchaser or consignee receive any pornographic material or material reasonably believed by the purchaser or consignee to be pornographic; or

(b) denies, revokes, or threatens to deny or revoke a franchise, or to impose any penalty, financial or otherwise, because of the failure or refusal to accept pornographic material or material reasonably believed by the purchaser or consignee to be pornographic.

[(2) A violation of this section is a class A misdemeanor punishable by a fine of not less than $500 and by incarceration, without suspension of sentence in any way, for a term of not less than 14 days.]

(2) (a) An offense under this section is a third degree felony punishable by:

(i) a minimum mandatory fine of not less than $1,000 plus $10 for each article exhibited up to the maximum allowed by law; and

(ii) incarceration, without suspension of sentence in any way, for a term of not less than 30 days.

(b) This Subsection (2) supersedes Section 77-18-1.

(3) A service provider, as defined in Section 76-10-1230, complies with this section if it complies with Sections 76-10-1231 and 76-10-1232.

Section 5. Section **76-10-1206** is amended to read:

**76-10-1206. Dealing in material harmful to a minor.**

(1) A person is guilty of dealing in material harmful to minors when, knowing that a person is a minor, or having negligently or recklessly failed to [exercise reasonable care in ascertaining] determine the proper age of a minor, he:

(a) intentionally distributes or offers to distribute, exhibits or offers to exhibit to a minor any material harmful to minors;

(b) intentionally produces, presents, or directs any performance before a minor, that is harmful to minors; or

(c) intentionally participates in any performance before a minor, that is harmful to minors.

(2) (a) Each separate offense under this section is a third degree felony punishable by:

(i) a minimum mandatory fine of not less than $300 plus $10 for each article exhibited up to the maximum allowed by law; and [by]

(ii) incarceration, without suspension of sentence [in any way], for a term of not less than 14 days.

(b) This section supersedes Section 77-18-1.

(3) (a) If a defendant has already been convicted once under this section, each separate further offense is a second degree felony punishable by:

(i) a minimum mandatory fine of not less than $5,000 plus $10 for each article exhibited up to the maximum allowed by law; and [by]

(ii) incarceration, without suspension of sentence [in any way], for a term of not less than one year.

(b) This section supersedes Section 77-18-1.

(4) (a) A service provider, as defined in Section 76-10-1230, complies with this section if it complies with Sections 76-10-1231 and 76-10-1232.

(b) A content provider, as defined in Section 76-10-1230, complies with this section if it complies with Section 76-10-1233.

Section 6. Section **76-10-1230** is enacted to read:

**76-10-1230.  Definitions.**

As used in Sections 76-10-1231, 76-10-1232, and 76-10-1233:

(1)  "Access restricted" means that a content provider limits access to material harmful to minors by:

(a)  properly rating content;

(b)  providing an age verification mechanism designed to prevent a minor's access to material harmful to minors, including requiring use of a credit card, adult access code, or digital certificate verifying age; or

(c)  any other reasonable measures feasible under available technology.

(2)  "Adult content registry" means the adult content registry created by Section 67-5-19.

(3)  "Consumer" means a natural person residing in this state who subscribes to a service provided by a service provider for personal or residential use.

(4)  "Content provider" means a person that creates, collects, acquires, or organizes

electronic data for electronic delivery to a consumer with the intent of making a profit.

(5) (a)  "Hosting company" means a person that provides services or facilities for storing or distributing content over the Internet without editorial or creative alteration of the content.

(b)  A hosting company may have policies concerning acceptable use without becoming a content provider under Subsection (4).

(6) (a)  "Internet service provider" means a person engaged in the business of providing a computer and communications facility through which a consumer may obtain access to the Internet.

(b)  "Internet service provider" does not include a common carrier if it provides only telecommunications service.

(7)  "Properly rated" means content using a labeling system to label material harmful to minors provided by the content provider in a way that:

(a)  accurately apprises a consumer of the presence of material harmful to minors; and

(b)  allows the consumer the ability to control access to material harmful to minors based on the material's rating by use of reasonably priced commercially available software, including software in the public domain.

(8) (a)  Except as provided in Subsection (8)(b), "service provider" means:

(i)  an Internet service provider; or

(ii)  a person who otherwise provides an Internet access service to a consumer.

(b)  "Service provider" does not include a person who does not terminate a service in this state, but merely transmits data through:

(i)  a wire;

(ii)  a cable; or

(iii)  an antenna.

(c)  "Service provider," notwithstanding Subsection (8)(b), includes a person who meets the requirements of Subsection (8)(a) and leases or rents a wire or cable for the transmission of data.

Section 7.  Section **76-10-1231** is enacted to read:

**76-10-1231.** **Data service providers -- Internet content harmful to minors.**

(1) (a)  Upon request by a consumer, a service provider shall filter content to prevent the transmission of material harmful to minors to the consumer.

(b)  A service provider complies with Subsection (1)(a) if it uses a generally accepted and commercially reasonable method of filtering.

(2)  At the time of a consumer's subscription to a service provider's service, or at the time this section takes effect if the consumer subscribes to the service provider's service at the time this section takes effect, the service provider shall notify the consumer in a conspicuous manner that the consumer may request to have material harmful to minors blocked under Subsection (1).

(3) (a)  A service provider may comply with Subsection (1) by:

(i)  providing in-network filtering to prevent receipt of material harmful to minors; or

(ii)  providing software for contemporaneous installation on the consumer's computer that blocks, in an easy-to-enable and commercially reasonable manner, receipt of material harmful to minors.

(b) (i)  Except as provided in Subsection (3)(b)(ii), a service provider may not charge a consumer for blocking material or providing software under this section, except that a service provider may increase the cost to all subscribers to the service provider's services to recover the cost of complying with this section.

(ii)  A service provider with fewer than 7,500 subscribers may charge a consumer for providing software under Subsection (3)(a)(ii) if the charge does not exceed the service provider's cost for the software.

(4)  If the attorney general determines that a service provider violates Subsection (1) or (2), the attorney general shall:

(a)  notify the service provider that the service provider is in violation of Subsection (1) or (2); and

(b)  notify the service provider that the service provider has 30 days to comply with the provision being violated or be subject to Subsection (5).

(5)  A service provider that violates Subsection (1) or (2) is:

(a)  subject to a civil fine of $2,500 for each separate violation of Subsection (1) or (2), up to $10,000 per day; and

(b)  guilty of a class A misdemeanor if:

(i)  the service provider knowingly or intentionally fails to comply with Subsection (1); or

(ii)  the service provider fails to provide the notice required by Subsection (2).

(6)  A proceeding to impose a civil fine under Subsection (5)(a) may only be brought by the attorney general in a court of competent jurisdiction.

(7) (a)  The Division of Consumer Protection within the Department of Commerce shall, in consultation with other entities as the Division of Consumer Protection considers appropriate, test the effectiveness of a service provider's system for blocking material harmful to minors under Subsection (1) at least annually.

(b)  The results of testing by the Division of Consumer Protection under Subsection (7)(a) shall be made available to:

(i)  the service provider that is the subject of the test; and

(ii)  the public.

(c)  The Division of Consumer Protection shall make rules in accordance with Title 63, Chapter 46a, Utah Administrative Rulemaking Act, to fulfil its duties under this section.

Section 8.  Section **76-10-1232** is enacted to read:

**76-10-1232.  Data service providers -- Adult content registry.**

(1) (a)  Upon request by a consumer, a service provider may not transmit material from a content provider site listed on the adult content registry created by Section 67-5-19 to a consumer.

(b)  A service provider complies with Subsection (1)(a) if it uses a generally accepted and commercially reasonable method of filtering.

(c)  At the time of a consumer's subscription to a service provider's service, or at the time this section takes effect if the consumer subscribes to the service provider's service at the time this section takes effect, the service provider shall notify the consumer in a conspicuous manner that:

(i)  the consumer may request to have material on the adult content registry blocked under Subsection (1)(a); and

(ii)  the consumer's request to have material harmful to minors blocked under Subsection (1)(a) may also result in blocking material that is not harmful to minors.

(2) (a)  A service provider may comply with Subsection (1) by:

(i)  providing in-network filtering to prevent receipt of material harmful to minors;

(ii)  providing software for contemporaneous installation on the consumer's computer that blocks, in an easy-to-enable and commercially reasonable manner, receipt of material harmful to minors; or

(iii)  complying with any federal law in effect that requires the blocking of content from a registry of sites containing material harmful to minors.

(b)  A service provider may block material from the adult content registry by domain name or Internet Protocol address.

(c) (i)  A service provider may not charge a consumer for blocking material or providing software under this section, except that a service provider may increase the cost to all subscribers to the service provider's services to recover the cost of complying with this section.

(ii)  A service provider with fewer than 7,500 subscribers may charge a consumer for providing software under Subsection (2)(a)(ii) if the charge does not exceed the service provider's cost for the software.

(d)  A service provider shall coordinate the service provider's list of content providers on the adult content registry with the attorney general's list of content providers on the adult content registry at least weekly.

(3)  If the attorney general determines that the service provider violates Subsection (1) or (2), the attorney general shall:

(a)  notify the service provider that the service provider is in violation of Subsection (1) or (2); and

(b)  notify the service provider that the service provider has 30 days to comply with the provision being violated or be subject to Subsection (4).

(4)  A service provider that violates Subsection (1) or (2) is:

(a)  subject to a civil fine of $2,500 for each separate violation of Subsection (1) or (2), up to $10,000 per day; and

(b)  guilty of a class A misdemeanor if the service provider knowingly or intentionally fails to comply with Subsection (1) or (2).

(5)  A proceeding to impose a civil fine under Subsection (4)(a) may only be brought by the attorney general in a court of competent jurisdiction.

Section 9.  Section **76-10-1233** is enacted to read:

**76-10-1233.  Content providers -- Material harmful to minors.**

(1)  A content provider that is domiciled in Utah, or generates or hosts content in Utah, shall restrict access to material harmful to minors.

(2)  The Division of Consumer Protection shall make rules in accordance with Title 63, Chapter 46a, Utah Administrative Rulemaking Act, to establish acceptable rating methods to be implemented by a content provider under Subsection (1).

(3)  If the attorney general determines that a content provider violates Subsection (1), the attorney general shall:

(a)  notify the content provider that the content provider is in violation of Subsection (1); and

(b)  notify the content provider that the content provider has 30 days to comply with Subsection (1) or be subject to Subsection (4).

(4)  If a content provider violates this section more than 30 days after receiving the notice provided in Subsection (3), the content provider is guilty of a third degree felony.

Section 10.  **Appropriation.**

(1) (a)  There is appropriated for fiscal year 2005-06 only, $100,000 from the General Fund to the Division of Consumer Protection for public service announcements advising consumers about the dangers of using the Internet.

(b)  It is the intent of the Legislature that the money appropriated in Subsection (1)(a) shall be used to publicize in various forms of media:

(i)  the dangers of using the Internet, especially Internet pornography;

(ii)  steps a consumer may take to learn more about the dangers of using the Internet;

(iii)  information about how a service provider can help a consumer learn more about the dangers of using the Internet, including the service provider's duties created by this bill; and

(iv)  how a consumer can monitor the Internet usage of family members.

(2) (a)  There is appropriated for fiscal year 2005-06 only, $30,000 from the General Fund, and for fiscal year 2005-06 ongoing, $70,000 from the General Fund, to the attorney general to establish and maintain the Adult Content Registry created by this bill.

(b)  It is the intent of the Legislature that the attorney general use existing technologies and systems to the extent possible in establishing the Adult Content Registry.

(3) (a)  There is appropriated for fiscal year 2005-06, $50,000 from the General Fund to the Division of Consumer Protection.

(b)  It is the intent of the Legislature that the Division of Consumer Protection use the monies appropriated for fiscal year 2005-06 in Subsection (3)(a) to research the effectiveness of:

(i)  existing and emerging technologies for limiting access to material harmful to minors on the Internet;

(ii)  obstacles to consumers limiting access to material harmful to minors on the Internet; and

(iii)  methods of educating the public about the dangers of using the Internet.

(c)  The Division of Consumer Protection shall report the findings of the research for which monies under Subsection (3)(a) are appropriated to the Utah Technology Commission before December 1, 2005.

Section 11.  **Effective date.**

If approved by two-thirds of all the members elected to each house, this bill takes effect upon approval by the governor, or the day following the constitutional time limit of Utah Constitution Article VII, Section 8, without the governor's signature, or in the case of a veto, the date of veto override, except that Section 76-10-1231 takes effect on January 1, 2006, and Sections 76-10-1232 and 76-10-1233 take effect on May 1, 2006.