JERROLD S. JENSEN (#1678)
Assistant Attorney General
MARK L. SHURTLEFF (#4666)
Attorney General
Attorneys For Plaintiff
160 East 300 South, 5th Floor
P.O. Box 140857
Salt Lake City, Utah  84114-0857
Telephone:  (801) 366-0353

---

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE KING'S ENGLISH, INC., et al., <br><br> Plaintiffs <br><br> vs. <br><br> MARK SHURTLEFF, In his official capacity as ATTORNEY GENERAL OF THE STATE OF UTAH, et al., <br><br> Defendants. | MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT <br><br><br> Case No. 2:05CV00485 <br><br> Judge Dee Benson |

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF PLAINTIFFS' STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.    EVEN IN FIRST AMENDMENT CASES, FEDERAL COURTS REQUIRE, AT AN IRREDUCIBLE MINIMUM, SOME SHOWING OF AN INJURY-IN-FACT TO ESTABLISH STANDING.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.    The United States Supreme Court Has Given Its Imprimatur To Filtering Software. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.    Content Labeling. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    II.    STATUS OF PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.    Plaintiffs Who Are Out-of-state Content Providers or Organizations Representing Third Parties Who Are Neither ISPs, Hosting Companies nor Utah-based Content Providers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.    Plaintiffs Who Are Internet Service Providers and Hosting Companies Doing Business in Utah . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        C.    Plaintiffs Who Are Utah-Based Content Providers . . . . . . . . . . . . . . . . 15

            1.    Utah-Based Content Providers Who Claim Not to Post Any Material Harmful to Minors, but "Fear" Their Website Will Be Blocked . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            2.    Utah-Based Content Providers Who Fear Their Websites May Contain Material Harmful to Minors . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## INTRODUCTION

This case is a facial challenge to H.B. 260, Amendments Related to Pornographic and Harmful Materials, passed by the Utah State Legislature in 2005 and amended by H.B. 5, Sub. 1, Internet Sexual Content – Protection of Minors, in 2007.

The Amended Complaint is essentially the same as the original Complaint, even though the amended legislation made significant changes to the original legislation. It is Defendants' position that none of the Plaintiffs have standing to maintain a facial challenge to this legislation.

## SUMMARY OF THE ACT

With the passage of H.B. 260, the Utah Legislature was attempting to restrict the ability of minors to access pornography on the Internet. In short, this was to be accomplished by essentially making Internet Service Providers (ISPs) subject to the State's Harmful to Minors statute. Fundamentally, the original bill did three things:

a.     <u>Filtering</u>:  It required all ISPs doing business in Utah to provide customers with an on-line filtering service similar to that provided by the national ISPs (i.e. AOL, MSN, Comcast, Earthlink, etc.), or provide customers, upon request, with filtering software that could be installed on the customer's home computer.

b.     <u>Adult Content Registry and Blocking</u>: The bill created an Adult Content Registry (ACR) to be maintained by the Utah Attorney General's Office, listing websites which would be considered a violation of Utah's Harmful to Minors statute. Customers could then request that

their ISP block the websites listed on the ACR from being accessed by that customer's Internet services account.[1]

       c.    <u>Content Labeling</u>:  Finally, H.B. 260 implemented a requirement for Utah-based Internet content providers to rate the content of their material similar to ratings for television and motion pictures.

       With the passage of H.B. 5, Sub. 1, the Adult Content Registry and all provisions related to targeted blocking were deleted. The amended legislation also permitted ISPs to charge for their filtering service, clarified that content labeling requirements were to apply only to Utah-based content providers, and exempted ISPs and hosting companies from being subject to the Harmful to Minors statute provided that: (a) ISPs provided some commercially viable filtering system, and (b) hosting companies which may distribute some material harmful to minors did so only incidentally to their main content and otherwise do not "intentionally engage, aid or abet" in the distribution of harmful material. Utah Code Ann. §§ 76-10-1205 and 1206.

       Whether intended so or not by the Legislature, H.B. 5 also considerably tightened the Harmful to Minors statute by changing the standard from a "prurient interest in sex <u>of</u> minors" to

---

[1] The ACR became the major objection raised by Plaintiffs for two fundamental reasons: (a) listing of a website of the ACR was a unilateral decision made by the Attorney General's Office without judicial review, and (b) blocking a website by its Internet address could have the effect of blocking of thousands of innocent websites. See <u>Center for Democracy and Technology v. Pappert</u>, 337 F.Supp.2d 606 (2004).

a "prurient interest in sex <u>with</u> minors."[2]  Utah Code Ann. § 76-10-1201(4).

Thus, as the legislation now stands, the act imposes a filtering requirement on Internet Service Providers doing business in the state of Utah.[3]  The statute requires no credit card use or age verification system.  For an Internet user who chooses to access pornography or material harmful to minors there are no restrictions whatsoever.  Contrary to other state and federal statutes, which have been declared unconstitutional, there are no criminal sanctions against ISP's if a minor accesses materials harmful to minors – provided that ISPs make a filtering system available to their customers.  The filtering system does not have to be activated; it does not have to be in use, it merely has to be available for use by the customer.  In addition, there are no criminal sanctions for a hosting company which distributes material harmful to minors, provided it is incidental to the materials they distribute and they are not otherwise engaged in distribution of pornographic materials.

The only possible persons subject to criminal sanctions under the Act are:  (a)  Internet Service Providers doing business in the state of Utah, (b) hosting companies located in the state of Utah, or (3) content providers located in the state of Utah dealing with material harmful to minors.

─────────────────────

[2] There is no legislative discussion regarding this change of language, so its impossible to know just what was intended by the change.

[3] As a practical matter, most Internet Service Providers currently offer such a filtering system; all national ISPs do, some local and regional ISPs do not.

3

## SUMMARY OF PLAINTIFFS' STATUS

Based upon the facts alleged in Plaintiffs' Amended Complaint, the 14 plaintiffs fall into one of three categories:

1.  Internet Service Providers and hosting companies,

2.  Out-of-state content providers, and

3.  Utah-based content providers.

## SUMMARY OF ARGUMENT

Plaintiffs do not have standing to maintain a <u>facial</u> challenge to the current legislation.

It is extremely ironic that in challenging the Child On-line Protection Act (COPA), 47 U.S.C. Section 231, the American Civil Liberties Union asserted that COPA should be declared unconstitutional because blocking and filtering software was a less restrictive alternative to prohibiting minors from accessing pornography on the internet than the provisions of COPA. <u>Ashcroft v. American Civil Liberties Union</u>, 542 U.S. 656, 124 S.Ct. 2783 (2004). The Supreme Court agreed. Not only did the Court endorse blocking and filtering software in <u>Ashcroft</u>, but they also upheld the use of the same in publicly funded libraries. <u>American Library Association, Inc. v. United States</u>, 539 U.S. 194, 123 S.Ct. 2297 (2003).

Given that endorsement by the United States Supreme Court, Plaintiffs' challenge of the use of blocking and filtering software in the Utah statute, as a First Amendment issue, is not subject to a <u>facial</u> challenge. At best, Plaintiffs' case would be a Dormant Commerce Clause

challenge to determine whether Utah can require ISPs located out-of-state, but doing business in the state, to implement a filtering system. The problem here is that there is no out-of-state ISP among the Plaintiffs.

The only other possible avenue of challenge is the Act's imposition of a rating requirement on Utah-based content providers. However, again, there is no plaintiff that has standing – because none of the plaintiffs herein can show any possibility of an injury-in-fact given the content of their material. There is no plaintiff in this case that is dealing in material harmful to minors.

## ARGUMENT

## I. EVEN IN FIRST AMENDMENT CASES, FEDERAL COURTS REQUIRE, AT AN IRREDUCIBLE MINIMUM, SOME SHOWING OF AN INJURY-IN-FACT TO ESTABLISH STANDING.

"Standing is a threshold requirement, determined with reference to both constitutional limitations on federal court jurisdiction in Article III and prudential limitations on the exercise of that jurisdiction." Baca v. King, 92 F.3d 1031, 1035 (10th Cir. 1996). To meet the constitutional minimum requirements, a plaintiff must demonstrate that: (1) he or she has suffered an injury-in-fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The burden is on Plaintiff to demonstrate he has standing. Utah v. Babbit, 137 F.3d 1193, 1202 (10th Cir. 1998).

Under the first prong of this test, an "[i]njury in fact must be concrete and imminent. Hypothetical or conjectural harm is not sufficient. <u>Essence Inc. v. City of Federal Heights</u>, 285 F.3d 1272, 1281 (10th Cir. 2002). "A litigant must show more than the fact that state officials stand ready to perform their general duty to enforce laws." <u>Doe v. Duling</u>, 782 F.2d 1202 (4th Cir. 1986). "In short, one must show a threat of prosecution that is both real and immediate, <u>Golden v. Zwickler</u>, 394 U.S. 103, 109-10 (1969), before a federal court may examine the validity of a criminal statute." <u>Id.</u>

The "gist of the question of standing" requires a plaintiff to allege a "personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." <u>Flast v. Cohen</u>, 392 U.S. 83, 99 (1968); See also <u>Schaffer v. Clinton</u>, 240 F.3d 878,882 (10th Cir. 2001).

In some instances involving free speech rights, the requirements for standing can be lessened. <u>Phelps v. Hamilton</u>, 122 F.3d 1309, 1326 (10th Cir. 1997). "Because the mere threat of prosecution under the allegedly unlawful statute may have a 'chilling' effect on an individual's protected activity, 'the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.'" <u>Id.</u> (citations omitted). "Regardless of this concern, however, a plaintiff bringing a facial challenge to a statute on First Amendment grounds must still satisfy the 'injury-in-fact' requirement in order to

demonstrate standing." Id. (citations omitted)

For example, in Virginia v. American Booksellers Ass'n, 484 U.S. 383, 108 S.Ct. 636 (1988), booksellers were granted standing in a facial challenge to a Virginia statute prohibiting commercial display of sexual or sadomasochistic material harmful to minors. As the Supreme Court stated in that case:

> To bring a cause of action in federal court requires that plaintiffs establish at an irreducible minimum an injury-in-fact; that is, there must be some "threatened or actual injuries resulting from the putatively illegal action. . . ." (citations omitted) That requirement is met here, as the law is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution.

At 392.

In the present case, however, the law is not aimed directly at Plaintiffs. The ISPs are required to offer a filtering system, but as shall be discussed, that concept has already been endorsed or upheld by the United States Supreme Court as the least restrictive means to advance a compelling state interest.[4] Otherwise, no plaintiff here is creating or distributing material on the Internet which content runs afoul of Utah's harmful to minors statute. At an "irreducible minimum" no plaintiff can show that this amended statute gives them a potential injury-in-fact or even a "chilling" effect on their constitutional right of free speech.

---

[4]The governmental interest in "shielding" children from exposure to indecent material is "compelling." Reno v. ACLU, 521 U.S. 844, 869 - 870 (1997). See also Ginsberg v. New York, 390 U.S. 629, 639 - 642 (1968).

**A.     The United States Supreme Court Has Given Its Imprimatur To Filtering Software.**

In 1998, Congress passed the Child On-Line Protection Act (COPA), 112 Stat. 2681-736, codified at 47 U.S.C. § 231, which, among other things, imposed criminal sanctions for someone posting content "harmful to minors" on the World-Wide Web, but provided an affirmative defense to commercial Web speakers who restricted access to prohibited materials "by requiring use of a credit card, debit account, adult access code or adult personal identification number," or "by any other reasonable measures that are feasible under available technology." Section 231(c)(1).

The American Civil Liberties Union took the position that the Act placed a burden on some protected speech by suppressing material that adults were constitutionally entitled to communicate and that less restrictive alternatives are available to protect minors, mainly "filtering software." The ACLU's brief filed with the United States Supreme Court states:

> The record shows, and both reports by Congress now confirm, that many alternative means are more effective at addressing minors' access to inappropriate material. (citation omitted) These options include the use of filtering software, the promotion of Internet education and high-quality Internet material for children, and the vigorous enforcement of existing laws. All of these approaches are notably less restrictive than COPA's criminal ban.

Brief for the Respondent, page 49, <u>Ashcroft v. American Civil Liberties Union</u>, 124 S.Ct. 2783 (2004). The United States Supreme Court accepted the ACLU's argument and engaged in a considerable discussion on the virtues of filtering software. As the Court said, "a court assumes

that certain protected speech may be regulated, and then asks what is the least restrictive

alternative that can be used to achieve the goal." 123 S.Ct. at 2791. Answering that question,

the court said, "blocking and filtering software is an alternative that is less restrictive than

COPA, and, in addition, likely more effective as a means of restricting children's access to

materials harmful to them." At 2792. In addition, the Court said:

> Filters are less restrictive than COPA. They impose selective
> restrictions on speech at the receiving end, not universal
> restrictions at the source. Under a filtering regime, adults without
> children may gain access to speech they have a right to see without
> having to identify themselves or provide their credit card
> information. Even adults with children may obtain access to the
> same speech on the same terms simply by turning off the filter on
> their home computers. Above all, promoting the use of filters does
> not condemn as criminal any category of speech, and so the
> potential chilling effect is eliminated, or at least much diminished.
> * * *
>
> Filters also may well be more effective than COPA. First, a filter
> can prevent minors from seeing all pornography, not just
> pornography posted to the Web from America. The District Court
> noted in its factfindings that one witness estimated that 40% of
> harmful-to-minors content comes from overseas. (citation omitted)
> COPA does not prevent minors from having access to those foreign
> harmful materials. That alone makes it possible that filtering
> software might be more effective in serving Congress' goals.

At 2792.

In upholding the Childrens' Internet Protection Act (CIPA), 114 Stat. 2763A - 335, which

mandated the use of filtering software in all public schools and libraries that received federal

funds – the vast majority of all schools and libraries – the Supreme Court also endorsed the use

of filtering software as the least restrictive means of preventing minors access to Internet

pornography.  <u>United States v. American Library Ass'n</u>, 123 S.Ct. 2297 (2003).

Plaintiffs' facial challenge to Utah's amendments to its harmful to minors statute relating

to filtering ignores the Supreme Court's holding on the subject.  Without a First Amendment

issue, Plaintiffs' facial challenge fails.  Plaintiffs cannot show that an injury-in-fact exists where

any of these plaintiffs have "alleged an intention to engage in a course of conduct arguably

affected with a constitutional interest, but proscribed by statute, and there exists a credible threat

of prosecution thereunder."  <u>Glover River Org. v. United States Dep't of Interior</u>, 675 F.2d 251,

254 (10th Cir. 1982).  As the Tenth Circuit said in <u>Glover</u>, to meet the injury-in-fact requirement a

plaintiff must show a "distinct and palpable injury" that is "both real and immediate, not

conjectural or hypothetical."  <u>Id.</u>

## B.    Content Labeling.

The content labeling requirement of H.B. 260 is implemented through rules to be

promulgated by the Utah Division of Consumer Protection.  The Division is required "to

establish acceptable rating methods to be implemented by a content provider."  Utah Code Ann.

§ 76-10-1233(1) and (2).  Because of the preliminary injunction in this case, the Division has not

yet established any rules.

Since there are already established protocols for rating Internet Content, the Division on

Consumer Protection will undoubtedly piggyback on technology already available.  The Platform

for Internet Content Selection (PICS) for example, is a cross-industry working group whose goal is to facilitate the development of technologies to give users of the Internet control over the kinds of material to which they and their children have access.  It is designed to help parents and teachers control what children access on the Internet.  The PICS platform is one on which other rating services and filtering software have been built.  PICS specification enables labels (metadata) to be associated with Internet content.  See www.w3.org/PICS/.

Whether the State of Utah, under the Supreme Court's guidelines of commercial and compelled speech, can require Internet content providers to label the content they create and distribute is an interesting question, but one that will have to be reserved for another day because none of these Plaintiffs can show potential injury-in-fact under the statute.

There is certainly no "chilling" effect under the statute since labeling only requires the content provider to insert an extra header in the HTTP header stream that precedes the contents of documents that are sent to web browsers.  It is assumed, of course, that the Division of Consumer Protection, rather than attempting to invent a whole new rating system, will follow one of the rating systems currently in use.  Until that decision is made, however, any of the Plaintiffs in this case are hard pressed to assert how they have standing to assert a facial challenge to the content labeling requirements of the statute.

## II.    STATUS OF PLAINTIFFS

Under the provisions of the amended Act, the only persons susceptible to being prosecuted for a violation of the Act are: (1) Internet Service Providers (ISPs) and hosting companies doing business in the state of Utah, and (2) Utah-based content providers.  Out-of-state content providers and organizations representing third-parties who are neither ISPs, hosting companies, nor Utah-based content providers, are not subject to the Act.

### A.    Plaintiffs Who Are Out-of-state Content Providers or Organizations Representing Third Parties Who Are Neither ISPs, Hosting Companies nor Utah-based Content Providers.

Based upon the information contained in Plaintiff's Amended Complaint, the following plaintiffs are out-of-state content providers and therefore are not subject to the Utah Act under any conceivable scenario:

1.    The Sexual Health Network, Inc.:  This plaintiff claims to be a "small, Internet-based company incorporated in the state of Connecticut," that distributes material which may be harmful to minors.  Amd. Cmplt. ¶¶ 31, 160 - 166.  An out-of-state content provider cannot be prosecuted under this Act.  Therefore this plaintiff should be dismissed for lack of standing.

2.    Comic Book Legal Defense Fund:  This plaintiff is a non-profit corporation with its principal place of business in Massachusetts, representing "over 1,000 comic book authors, artists, retailers, distributors, publishers, librarians located in Utah."  Amd. Cmplt. ¶¶ 61, 174.  Since this plaintiff does not claim to be an ISP, a Utah-based content provider or hosting

company, nor represent an ISP or Utah-based content provider or hosting company, it is not subject to the Act. Therefore, this plaintiff should be dismissed for lack of standing.

       3.    <u>Publishers Marketing Association</u>: PMA is a non-profit trade association located in California, representing more than 4,200 publishers across the United States and Canada. It claims 30 of its members are located in Utah, but makes no claim that any of those 30 members are Utah-based content providers. Amd. Cmplt. ¶¶ 38,178 -180. Since this Plaintiff does not claim to be either an ISP or a Utah-based content provider or hosting company, nor does it claim that any of its Utah members are Utah-based content providers or hosting companies, the provisions of this Act do not apply to this plaintiff or its members, and it should also be dismissed.

       4.    <u>Association of American Publishers, Inc.</u>: This plaintiff is a national association of the United States book publishing industry. Its approximately 300 members include most of the major commercial book publishers in the United States. Its members publish hardcover and paperback books and "also produce computer software and electronic products and services." This plaintiff is incorporated in New York and has its principal place of business in New York City and in the District of Columbia. Amd. Cmplt. ¶¶ 35, 172 - 173. This plaintiff does not claim to be an ISP nor to have any members who are Utah-based content providers or hosting companies. Therefore, neither the association nor its members, based upon the information provided in the Amended Complaint, could be prosecuted under the Act. Therefore, this plaintiff

should also be dismissed for lack of standing.

5.    Freedom to Read Foundation: FTRF is a non-profit membership organization established by the American Library Association to promote and defend First Amendment Rights.  It is incorporated in Illinois and has its principal place of business in Chicago.  FTRF claims that it "sues on its own behalf, on behalf of its members who use on-line computer communication systems, and on behalf of the patrons of its member libraries."  Amd. Cmplt. ¶ 37, 175 - 177.  Since it does not claim to represent ISPs or Utah-based content providers or hosting companies, it is not subject to the Act and should be dismissed.

**B.    Plaintiffs Who Are Internet Service Providers and Hosting Companies Doing Business in Utah.**

1.    IPNS of Utah: IPNS of Utah is an Internet Service Provider which provides Internet access and web hosting services to customers in and outside the state of Utah.  Amd. Cmplt. ¶¶ 29, 156 - 157.  IPNS of Utah is the successor to Computer Solutions, a plaintiff in the original  Complaint, who defendants wanted to make the "poster child" for the original Act. Computer  Solutions was the model ISP, having more filtering options than any ISP of which defendants were aware.  Assuming that IPNS of Utah offers a filtering service, it is in compliance with the Act and should therefore be dismissed for lack of standing.  If it does not offer a filtering system, it would have standing but for the fact that the United States Supreme Court has already ruled that a filtering system is the least burdensome means available for restricting minors' access to material harmful to minors.  Therefore, Defendants do not see how this Plaintiff has

14

standing to maintain a facial challenge to the amended Act.

2.     <u>RidgeTech.com, Inc.</u>:  RidgeTech.com, Inc. has been substituted in the place of Mountain Wireless, a plaintiff in the original Complaint. The Amended Complaint does not state whether or not RidgeTech.com is a successor to Mountain Wireless. It claims to be both an Internet Service Provider and a hosting company. Amd. Cmplt. ¶¶ 30, 158 - 159. It does not state whether it offers a filtering system to consumers. If it does, it is in compliance with the Act and therefore lacks standing to maintain this facial challenge. If it does not offer a filtering system, it does have not standing for the same reasons outlined above referencing Plaintiff IPNS of Utah.

**C.     Plaintiffs Who Are Utah-Based Content Providers.**

      **1.     Utah-Based Content Providers Who Claim Not to Post Any Material Harmful to Minors, but "Fear" Their Website Will Be Blocked.**

Based upon the information contained in the Amended Complaint, the following plaintiffs are Utah-based content providers who do not post material on their website which would be considered harmful to minors, but "fear" that the blocking of one website by an ISP may block their website. Since there are no targeted blocking provisions in the amended Act (there were in the original Act), these Plaintiffs should also be dismissed.

a.     <u>W. Andrew McCullough</u>: Mr. McCullough is a Utah resident who maintains a website for a prior political campaign in Utah. While the website is accessible, it has not been updated since his run for political office in 2004. He claims the website "contains no content that

would be considered harmful to minors," but "fears that his website will be blocked as a result of actions by ISPs to comply with the Act." Amd. Cmplt. ¶¶ 28, 155. Since the amended Act does not provide for blocking, Mr. McCullough should be dismissed as a plaintiff.

b. <u>Utah Progressive Network</u>: UPNet is a coalition of organizations and individuals in Utah, which operates a website. "This website contains no content that would be considered 'harmful to minors.' " Amd. Cmplt. ¶ 167. Rather, UPNet "fears" that its website would be blocked as a result of actions by the ISPs to comply with the amended Act. Amd. Cmplt. ¶¶ 32, 167. UPNet's "fear" that their site will be blocked is unrealistic. Since the amended Act does not provide for blocking, Utah Progressive Network should be dismissed as a plaintiff.

### 2. Utah-Based Content Providers Who Fear Their Websites May Contain Material Harmful to Minors.

The amended Act provides that "a content provider that is domiciled in Utah, or generates or hosts content in Utah, shall restrict access to material harmful to minors." Utah Code Ann. § 76-10-1233(1). The following plaintiffs would be categorized as Utah-based content providers, but are not considered by Defendants as parties distributing material harmful to minors, therefore not subject to the provisions of the Act.

a. <u>The King's English</u>: The King's English is a Salt Lake City bookstore, selling books covering a wide variety of topics. It maintains a website on which it posts content regarding its books as well as material from Booksense, a national web service. Amd. Cmplt. ¶¶ 25, 147 - 149. As a hosting company, any of the material The King's English portrays on its

website, as alleged in the Amended Complaint, would either not be harmful to minors or would be "incidental" to its function as a bookstore, and therefore exempt from the provision of the Harmful to Minors Act.  As noted in the Affidavit of Attorney General Mark Shurtleff and District Attorney David Yocom, filed August 23, 2005, (Docket #9) Defendants find nothing on this plaintiff's website which violates the Harmful to Minors statute.  They further state that they "find it extremely difficult to conceive of a scenario in which we would regard these plaintiffs (referring to The King's English), as posting anything on their website which would be in violation of the Act."  Aff. ¶¶ 5 and 7.

It appears that none of this plaintiff's content involves a "prurient interest in sex with minors," so it is unlikely that its content would fall within the scope of the labeling requirements. If such material were added to this plaintiff's website, it could meet the requirements of the Act by labeling it in accordance with rules to be promulgated by the Division.  Since no rules have been passed, The King's English cannot demonstrate how they would apply to its specific content.

Because the amended Act does not impose any content-based restriction on Plaintiffs' speech, this plaintiff does not have standing to maintain a facial challenge to the Act.

b.      <u>Sam Weller's Zion Bookstore</u>: Sam Weller's Zion Bookstore is a Salt Lake City bookstore, which sells books over the internet and is "considering joining a national web service such as Booksense."  Amd. Cmplt. ¶¶ 26, 150 - 152.  This plaintiff and The King's English are

similar in nature. This plaintiff should be dismissed for the same reasons stated in the paragraphs above referencing The King's English.

      c.     <u>American Booksellers Foundation for Free Expression</u>: ABFFE is a not-for-profit organization of the American Bookseller's Association, whose members are bookstores in the United States. These members are not "adult bookstores." They claim to represent many bookstores in the state of Utah. Their members also sell books over the Internet and may or may not have websites. Amd. Cmplt. ¶¶ 28, 168 - 169. Defendants regard this plaintiff, and the members it represents, in the same vein as it regards plaintiffs The King's English and Sam Weller's Zion Bookstore. See Affidavit of Shurtleff and Yocom (Docket #9). This plaintiff should be dismissed for the same reasons that The King's English and Sam Weller's Zion Bookstore should be dismissed.

      d.     <u>ACLU of Utah</u>: The ACLU of Utah sues on its own behalf, and on behalf of its members who use on-line computer communications systems, and maintains a website that offers electronic copies of publications, reports, legal documents, press releases, and other material related to its legal, legislative, educational and advocacy work. Amd. Cmplt. ¶¶ 34, 170 - 171. There has been no showing that the ACLU of Utah intends to post on its website content involving a "prurient interest in sex with minors." Since the ACLU has not alleged a content-based restriction on its free speech rights, it does not have standing to bring a facial challenge to the amended Act and should be dismissed.

e.     <u>Nathan Florence</u>: Mr. Florence is an artist who uses his website to display his art and is "worried" that some of the depictions of nude figures might be considered in violation of the amended Act.  Amd. Cmplt. ¶¶ 27, 153 - 154.  First, it appears that none of this content involves a "prurient interest in sex with minors," so it is unlikely that he would fall within the scope of the labeling requirements.  If such material were added to his website, Mr. Florence could meet the requirements of Act by labeling it in accordance with rules to be promulgated by the Division.  No rules have been passed and Mr. Florence cannot demonstrate how they would apply to his specific content.  Thus, the amended Act imposes no content-based restriction on Mr. Florence's speech.  Therefore, he, too, should be dismissed as a plaintiff for a facial challenge.

**CONCLUSION**

This is a facial challenge to an act that imposes no free speech restrictions on anyone. Essentially, the Act requires ISPs to provide filtering software to their customers.  It also requires Utah-based Internet content providers to identify material harmful to minors so it can be filtered in accordance with the United States Supreme Court's guidance on the subject.  If they are creating and distributing material harmful to minors on their website, they must label the content. However, none of the plaintiffs herein are creating or distributing material harmful to minors and therefore lack standing to maintain this facial challenge.

DATED this 31st day of May, 2007.

MARK L. SHURTLEFF
Attorney General

/s/ Jerrold S. Jensen
_____
JERROLD S. JENSEN
Assistant Attorney General

## CERTIFICATE OF SERVICE

This is to certify that copies of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT was served by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

HOWREY LLP
Attorneys for Plaintiffs
Wesley D. Felix, e-filer

AMERICAN CIVIL LIBERTIES UNION OF UTAH FOUNDATION, INC.
Attorneys for Plaintiffs
Margaret D. Plane, e-filer

CENTER FOR DEMOCRACY & TECHNOLOGY
Attorneys for Plaintiffs
John B. Morris, e-filer

SONNENSCHEIN NATH AND ROSENTHAL LLP
Attorneys for Plaintiffs
Michael A. Bamberger, e-filer


　　/s/ Peni Cox
Secretary