IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

FILED
U.S. DISTRICT COURT

2007 NOV 29  A 8: 31

DISTRICT OF UTAH

BY:_____
       DEPUTY CLERK

|  |  |
|---|---|
| THE KINGS ENGLISH, INC., et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>MARK SHURTLEFF, In his official capacity as ATTORNEY GENERAL OF THE STATE OF UTAH, et al.,<br><br>        Defendants. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:05-CV-485<br><br>Judge Dee Benson |

Before the Court is Defendants' motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss this action against all Plaintiffs for lack of standing.

## Background

Since the early 1970s, Utah law has prohibited persons from intentionally distributing material that is deemed "harmful to minors." *See* Harmful to Minors Act, Utah Code Ann. § 76-10-1206 (2007). In 2005, the Utah legislature extended this prohibition to the Internet. *See* H.B. 260, 56th Leg., Gen. Sess. (Utah 2005), *amended by* H.B. 5, 57th Leg., Gen. Sess. (Utah 2007). The Utah Harmful to Minors Act now requires that internet service providers ("ISPs"), web hosts, and content providers take measures to restrict the ability of minors to access pornography on the Internet.

Plaintiffs argue that the Utah Harmful to Minors Act as amended violates on its face the United States Constitution. Plaintiffs challenge four provisions of the Act on First Amendment and/or Commerce Clause grounds. The challenged provisions are:

1.    Utah Code § 76-10-1206 expanding Utah law with respect to the distribution to minors of "harmful to minors" material to apply to distribution on the Internet (challenged on First Amendment grounds);

2.      Utah Code § 76-10-1233 requiring Utah-connected internet providers to
        self-evaluate and label the content of their speech, or to restrict access to
        the speech (challenged on First Amendment grounds);

3.      Utah Code § 76-10-1231 requiring ISPs to block access to all "harmful to
        minors" material upon customers' requests (challenged on Commerce
        Clause grounds); and

4.      Utah Code § 76-10-1205 requiring that ISPs and others not induce
        acceptance by customers of "pornographic" material (challenged on both
        First Amendment and Commerce Clause Grounds).

With regard to each of the above provisions, Defendants argue that Plaintiffs lack standing and,

therefore, Plaintiffs' Amended Complaint should be dismissed.

### Plaintiffs

In order to appropriately address whether Plaintiffs have standing to challenge the Utah

Harmful to Minors Act as amended, it is necessary to understand who each of the Plaintiffs are.

Plaintiffs consist of fourteen individuals and entities who are content and access providers on the

Internet.  Each of the Plaintiffs can be classified generally as falling within one of three groups:

(1) ISPs and Web Hosting Companies; (2) Utah-based Content Providers; and (3) Out-of-State

Content Providers.

**Internet Service Providers & Web Hosting Companies**:

        IPNS of Utah, LLC. ("IPNS") is an Internet service provider that provides Internet access

and web hosting services to customers in and outside of Utah.  IPNS is organized in Utah and has

its principal place of business in Salt Lake City, Utah.

        RigidTech.Com, Inc. ("RigidTech") is an Internet service provider that provides Internet

access and web hosting services to customers in and outside of Utah.  RigidTech is incorporated

in Utah and has its principal place of business in Salt Lake City, Utah.

**Utah-Based Content Providers**:

The Kings English, Inc. is a thirty-year old, locally-owned independent bookstore in Salt Lake City, Utah. The Kings English Bookstore carries a broad of range of books, publishes a newsletter with book reviews and other news about books, and hosts frequent readings and signings by a variety of authors. The Kings English maintains a web site from which it advertises its complete inventory and distributes a monthly Internet newsletter.

Sam Weller's Zion Bookstore is also a locally owned bookstore in Salt Lake City, Utah. Sam Weller's carries a wide variety of new, used, and rare books, and maintains an extensive online collection available through its website. Sam Weller's also publishes its newsletter on the web site.

Nathan Florence is a Salt Lake City artist who sells and displays his artwork on the Internet, as well as in local and regional galleries. Some of Mr. Florence's art depicts nude figures.

W. Andrew McCullough was a candidate for Attorney General of Utah in the 2004 election, and operates a campaign web site. Mr. McCullough anticipates running for state-wide office again in the future and, therefore, continues to maintain his web site. Mr. McCullough fears that because his web site shares an Internet Protocol Address with more than 45,000 other, unrelated sites, some of which may contain material that may be deemed harmful to minors, his web site may be blocked as a result of the Harmful to Minors Act.

Utah Progressive Network Education Fund, Inc. ("UPNet") is a coalition of organizations and individuals committed to promoting social, racial, economic, and environmental justice. UPNet fears that because their web site shares an Internet Protocol Address with more than 1,700

other, unrelated sites, some of which may contain material that may be deemed harmful to minors, their web site may be blocked as a result of the Harmful to Minors Act.

The American Civil Liberties Union of Utah ("ACLU of Utah") is the Utah affiliate of the American Civil Liberties Union, a nationwide organization dedicated to defending principles of liberty and equality embodied in the Constitution. The ACLU of Utah has more than 2,300 members and maintains a web site to further its mission.

**Out-of-State Content Providers**:

The Sexual Health Network, Inc. ("The Sexual Health Network") is an Internet-based company incorporated in the State of Connecticut. The Sexual Health Network is dedicated to providing easy access to sexuality information, education and other sexuality resources for people with disability, chronic illness or other health-related problems.

Comic Book Legal Defense Fund ("CBLDF") is a nonprofit corporation dedicated to defending the First Amendment Rights of the comic book industry. CBLDF represents over 1,000 comic book authors, artists, retailers, distributors, and publishers, some of which are located in Utah.

Association of American Publishers, Inc. ("AAP") is the national association of the United States book publishing industry. AAP's approximately 300 members include most of the major commercial book publishers in the United States, as well as smaller and nonprofit publishers, university presses and scholarly associations.

Publisher's Marketing Association ("PMA") is a nonprofit trade association representing more than 4,200 publishers across the United States and Canada, including Utah. The PMA represents predominantly nonfiction publishers and assists members in their marketing efforts to the trade.

4

Freedom to Read Foundation ("FTRF") is a nonprofit sister organization to the American Library Association.  FTRF promotes and defends the Constitutional guarantees of freedom of expression and freedom to receive information.

American Booksellers Foundation for Free Expression ("ABFFE") is a nationwide nonprofit organization educating booksellers, other members of the book industry, and the public about the dangers of censorship, and promoting the free expression of ideas.  ABFFE's members include many Utah bookstores.

## Standard of Review

Defendants have filed the present motion to dismiss based solely on the pleadings in the case.  When evaluating a plaintiff's standing in the context of a motion to dismiss on the pleadings, the Court "accept[s] as true all material allegations of the complaint, and ... construe[s] the complaint in favor of the complaining party." *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

## Analysis

### I.    Standing

"Standing is a threshold requirement, determined with reference to both constitutional limitations on federal court jurisdiction in Article III and prudential limitations on the exercise of that jurisdiction." *Baca v. King*, 92 F.3d 1031, 1035 (10th Cir. 1996).  To meet the constitutional requirements, a plaintiff must demonstrate that: (1) he has suffered an injury-in-fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

5

In cases involving free speech rights, the requirements for standing can be somewhat lessened. *Sec'y of State of Maryland v. Munson*, 467 U.S. 947, 956 (1984). But the first requirement – that the plaintiff suffer an injury-in-fact – must be satisfied. *See Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997). A plaintiff will satisfy the injury-in-fact requirement if he has pled a credible and well-founded fear that the statute will be enforced against him. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Stated differently, in order to have standing in this case, each Plaintiff must show – "at an irreducible minimum" – a realistic possibility of being prosecuted under the Utah Harmful to Minors Act, *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988), or demonstrate by his pleadings that his free speech rights has been or will be sufficiently chilled.

## II.    Standing to Challenge § 76-10-1206

Utah Code § 76-10-1206 prohibits ISPs, content providers, and web hosts from distributing material that is "harmful to minors" on the Internet. Material is deemed harmful to minors if it: "(i) taken as a whole, appeals to the prurient interest in sex with minors; (ii) is patently offensive to prevailing standards in the adult community as whole with respect to what is suitable material for minors; and (iii) taken as a whole, does not have serious value for minors." Utah Code Ann. § 76-10-1201 (2007).

Plaintiffs challenging § 1206 include out-of-state content providers (The Sexual Health Network, CBLDF, PMA, AAP, FTRF, and ABFFE), as well as Utah-based content providers (The Kings English Bookstore, Sam Weller's Zion Bookstore, ACLU of Utah, and Nathan Florence). Each of these Plaintiffs has alleged fear of prosecution because of material with sexual content they sell or transmit over the Internet. Furthermore, these Plaintiffs allege that §

76-10-1206 has a chilling effect on their free speech rights, forcing them to self-censor constitutionally protected material to avoid possible prosecution.

### A.    Out-of-State Content Providers

Defendants argue that the Utah Harmful to Minors Act only applies to Utah-based content providers, and thus, for that reason alone, all out-of-state content providers lack standing to challenge the statute. But there is nothing in § 76-10-1206 which limits its application to in-state content providers. By its own terms, § 76-10-1206 applies to any "person," with no geographic or other limit. *Id.* Although § 76-10-1206 provides safe harbor provisions for in-state entities, the underlying criminal offense is in no way limited. Thus, although Defendants claim that the Act is only directed at Utah-based content providers, *see* Affidavit of Attorney General Mark Shurtleff and District Attorney David Yocom, filed August 23, 2005, Docket No. 9, on its face, § 76-10-1206 applies to any "person," whether in or out of the State.

The Sexual Health Network, CBLDF, PMA, AAP, FTRF, and ABFFE are all out-of-state content providers that post and discuss content on the Internet (or represent others who post and discuss content on the Internet), that includes resources on sexual advice for disabled persons, AIDS prevention, visual art and images, and resources for gay and lesbian youth. For example, The Sexual Health Network maintains a web site that gives advice to persons who are disabled or otherwise impaired on how to enhance their sexual experiences. The web site includes graphic descriptions and visual representations. Plaintiffs argue that these and many other constitutionally protected materials they distribute could be classified as "harmful to minors" under the amended Utah Act, making them subject to the Act's provisions.

Accepting as true all material allegations in the Amended Complaint, it appears that these out-of-state content providers produce and/or distribute material over the Internet (or represent

7

persons that produce and/or distribute material over the Internet) that could be deemed "harmful

to minors." Therefore, at the pleading stage, The Sexual Health Network, CBLDF, PMA, AAP,

FTRF, and ABFFE have all demonstrated a credible and well-founded fear of prosecution under

the Act and thus all have standing to challenge § 76-10-1206.

### B.    Utah-Based Content Providers

The Utah-based content providers challenging § 76-10-1206 on First Amendment

grounds include: The King's English; Sam Weller's Zion Bookstore; ACLU of Utah; and Nathan

Florence.  With regard to each of these Plaintiffs, Defendants argue that none of them have

sufficiently alleged facts to show that they produce or distribute material that is "harmful to

minors" and, therefore, all lack standing.  Plaintiffs respond that under the amended Act, it is

impossible to know what material falls within the definition of "harmful to minors." Therefore,

because they all produce material that could potentially be seen as "harmful to minors," they

have a credible fear of possible prosecution and the Act has a chilling effect on their speech,

forcing them to self-censor material on their web sites that is otherwise constitutionally

protected.  Because of the variety of content that each of these Plaintiffs produce and display on

the Internet, each Plaintiff's arguments will be analyzed separately.

### 1.    The King's English, Inc.

The King's English sells books covering a wide variety of topics, some of which contain

sexual content.  The King's English argues that when these books are advertised on-line, they

could be described in ways that depict nudity and/or sexual conduct that could be deemed

"harmful to minors."  For example, the cover of Margaret Atwood's novel Oryx and Crake,

which is displayed on-line, features two nude female torsos joined as one.  Other examples

include advertisements for D.H. Lawrence's Lady Chatterly's Lover, Gustave Flaubert's

Madame Bovary, and Vladimir Nabokov's Lolita. The King's English argues that by advertising these and other similar materials on-line, they have a credible fear of prosecution under § 76-10-1206.

The King's English has been operating in Salt Lake City, as a brick and mortar bookstore, for thirty years. Since The King's English's existence, the Utah Harmful to Minors Act, enacted in 1973, has applied to brick and mortar bookstores. Not once, however, during this thirty-year period has The King's English been prosecuted under the Utah Harmful to Minors Act. In fact, there is no evidence that any similarly situated bookstore has ever been prosecuted under the Act. The King's English seems to be arguing that because the Act now applies to the Internet, where The King's English advertises on-line the same books it sells in its store, it now faces a credible and well-founded fear of prosecution under § 76-10-1206. This appears to be mere speculation and without more, cannot be supported by a mere allegation in the Complaint. The Court cannot accept Plaintiff's argument that the same books advertised and sold in the store – which have never been held to violate the Act – will now somehow be deemed by the State of Utah to violate the Act by being advertised and sold on-line.

The King's English further argues that even though they have not been prosecuted in the past, the amended definition of "harmful to minors" has a chilling effect on their free speech rights going forward. They argue that because they cannot know what material falls within the definition of "harmful to minors" after the 2007 Amendments, they will be forced to self-censor otherwise constitutionally protected material from their web site to avoid future prosecution. Prior to the 2007 Amendments, the Utah definition of "harmful to minors" followed the three-pronged approach required by U.S. Supreme Court precedent, the first of which being that the material "appeals to the prurient interest in sex *of* minors." Utah Code Ann. § 76-10-1201 (2005)

(emphasis added).  In 2007, this was changed to, "appeals to the prurient interest in sex *with* minors." Utah Code Ann. § 76-10-1201 (2007) (emphasis added).

The King's English argues that because it is unclear whether this change was meant to limit "harmful to minors" materials to descriptions and representations of explicit sex where one or both of the participants is a minor, or to expand the definition to include descriptions or representations of explicit sex where neither of the participants is a minor but which appeals to the prurient interest of a minor in sex with or among minors, this uncertainty compounds the chilling effect this statute has on Plaintiff's free speech rights.  But as explained above, The King's English has failed to sufficiently plead or demonstrate how any of the materials they produce or distribute could meet either definition.  Further missing from Plaintiff's argument and its Complaint is any credible allegation that this provision has actually had a chilling effect on their speech.  There is nothing to show that The King's English has refrained from advertising, selling, or otherwise distributing materials they otherwise would but for the amended Act. Neither is there anything sufficient in the pleadings to show that The King's English is planning to advertise or sell in the near future material that could be deemed "harmful to minors." Therefore, even accepting as true all material allegations of the Amended Complaint and construing them in Plaintiff's favor, The King's English has not demonstrated an injury-in-fact from the enactment of § 76-10-1206.   Therefore, the Court finds that The King's English lacks standing to challenge Utah Code § 76-10-1206 as amended.

## 2.    Sam Weller's Zion Bookstore

Sam Weller's Zion Bookstore is also a locally owned bookstore doing business in Salt Lake City, Utah.  Sam Weller's has been in business since 1929, carrying a wide variety of new, used, and rare books and also maintaining an extensive collection on-line available through its

web site. Sam Weller's makes essentially the same arguments and rests its claims on the same pleadings as The King's English, alleging a fear of prosecution under § 76-10-1206 if they do not self-censor. But just as The King's English, Sam Weller's has failed to demonstrate an injury-in-fact from the § 76-10-1206 amendment. Sam Weller's has operated under the Utah Harmful to Minors Act for over thirty years without ever being prosecuted under the Act. There is nothing in the pleadings indicating that Sam Weller's plans to expand their current inventory – which has never been held to violate the Act – to include material that would be deemed "harmful to minors" (under any definition). For the same reasons The King's English lacks standing to challenge § 76-60-1206, the Court also finds that Sam Weller's lacks standing.

### 3. ACLU of Utah

The American Civil Liberties Union of Utah is the Utah affiliate of the American Civil Liberties Union, a nationwide organization of nearly 300,000 members. The ACLU of Utah maintains a web site that offers electronic copies of the affiliate's publications, reports, legal documents, press releases and other material related to its legal, legislative, educational, and advocacy work. Some of the ACLU of Utah's on-line resources contain sexual subject matter.

In their fight against censorship and the protection of First Amendment freedoms, the ACLU of Utah and its affiliate have sufficiently alleged in the Complaint that they post on their web site material that could be deemed "harmful to minors" under the Act. Examples include copies of ACLU of Utah and ACLU court briefs in cases involving arts censorship, obscenity, sex education, privacy rights, and discrimination against gays and lesbians. According to the ACLU of Utah, minors are an important audience for its on-line resources and censorship of any of the materials they post would be antithetical to the organization's exercise of freedom of speech. Although it is difficult to imagine that the ACLU of Utah would be prosecuted under the

11

Act based on sexually explicit content in court briefs and legal documents, at the pleading stage the Court finds standing for this Plaintiff to challenge § 76-10-1206.

### 4.    Nathan Florence

Nathan Florence is a Salt Lake City artist who sells and displays his artwork on the Internet, as well as in local and regional galleries. Some of Mr. Florence's art depicts nude figures that he fears might be considered in violation of the amended Act. Based on the nature of his artwork, and construing the Amended Complaint in his favor, Nathan Florence has pled a credible fear of possible prosecution under the amended Act. Therefore, the Court finds that Mr. Florence has standing to challenge § 76-10-1206.

## III.    Standing to Challenge § 76-10-1233

Utah Code § 76-10-1233 requires that Utah-based Internet content providers restrict access to material harmful to minors by either labeling the content as "harmful to minors" so that it can be properly filtered out by those consumers who request a filtering service, or by providing an age verification mechanism on the web site itself to prevent access to minors. Utah Code Ann. § 76-10-1233 (2007); Utah Code Ann. § 76-10-1230 (2007) (providing the definition of "access restricted"). Requiring content providers to restrict access through an age verification mechanism, without another alternative, has been enjoined by the U.S. Supreme Court as unconstitutional. *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666-67 (2004). Defendants distinguish § 76-10-1233 from the holding in *Ashcroft* by explaining that under § 76-10-1233 content providers have alternatives: an age verification mechanism; labeling "harmful to minors" material; or any other reasonable means designed to restrict access. Utah Code Ann. § 76-10-1230 (2007). Plaintiffs argue that the labeling requirement imposed by § 76-10-1233

amounts to unconstitutionally compelled speech under the First Amendment. *See Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 795 (1988).

Plaintiffs challenging § 76-10-1233 are the same four Utah-based content providers that challenged § 76-10-1206 (The King's English, Inc., Sam Weller's Zion Bookstore, ACLU of Utah, and Nathan Florence). The King's English and Sam Weller's argue that not only does the labeling requirement amount to compelled speech, but it also imposes a burden on them with regard to maintaining their web sites. The King's English argues that because it uses a national web service to provide the content for much of its web site, it would be almost impossible to review and label all of it. Sam Weller's argues that it would like to begin using a national web service to help maintain its web site, but § 76-10-1233 will prohibit the bookstore from doing so. But as stated above, The King's English and Sam Weller's have failed to sufficiently plead that they distribute or plan to distribute over the Internet any material that would be "harmful to minors" and thus, require labeling. Therefore, The King's English and Sam Weller's lack standing to challenge § 76-10-1233.

The remaining Utah-based content providers (ACLU of Utah and Nathan Florence) have standing to challenge § 76-10-1233. They have demonstrated that they distribute material over the Internet that could be deemed "harmful to minors." By distributing such material, they will be subject to the labeling requirement imposed by § 76-10-1233. Accepting as true all material allegations in the Amended Complaint, the Court finds that the ACLU of Utah and Nathan Florence have standing to challenge § 76-10-1233.

## IV.    Standing to Challenge § 1231

Utah Code § 76-10-1231 requires that upon request by the consumer, all Utah-based ISPs must provide a filtering service to prevent the transmission to the consumer of material "harmful

to minors." Utah Code Ann. § 76-10-1231 (2007). Plaintiffs IPNS of Utah, LLC, and RigidTech.com, Inc., both of whom are Utah-based ISPs providing access and web hosting services to customers in and outside of Utah, argue that because of the costly burdens this imposes on ISPs and the likelihood of inconsistent state regulations, they have standing to challenge § 76-10-1231 on Commerce Clause grounds.

Conspicuously missing from either of these Plaintiff's allegations, however, is any assertion that they do not already offer a filtering service to their customers. If they are already offering such a service, then they are in compliance with the provision and they cannot demonstrate an injury-in-fact. Even assuming that neither Plaintiff offers a filtering service, it is still difficult to find what the "costly burdens" of compliance are that Plaintiffs refer to. The statute itself allows all ISPs to charge the consumer for providing filtering, thus offsetting any costs. Therefore, Plaintiffs have not demonstrated that the filtering requirement imposed by § 76-10-1231 will result in an injury-in-fact.

Plaintiffs next assert that subsection (7) of § 76-10-1231, giving the Division of Consumer Protection authority to test the effectiveness of an ISPs filtering service, will subject them to different testing requirements in each state, and will impose an undue burden on them in violation of the Commerce Clause. *See* Utah Code Ann. § 76-10-1231(7) (2007). Plaintiffs' allegations in this regard are premature. To date, the Division of Consumer Protection has not even decided how to implement this subsection. To assert that the testing requirements in Utah will impose a higher standard than in other states, therefore, is pure speculation at present and does not meet the "case in controversy" requirement of Article III. Accordingly, because IPNS of Utah, LLC, and RigidTech.com, Inc. have failed to demonstrate a present injury-in-fact resulting from § 76-10-1231, the Court finds that they lack standing to challenge this provision.

14

V.    **Standing to Challenge § 1205**

Utah Code Ann. § 76-10-1205 prohibits a person from engaging in conduct that would induce an end-user to receive pornographic material as a condition of a sale or to avoid a penalty. Although Plaintiffs attempt to characterize the requirements of § 76-10-1205 as "vague and wholly undefined obligations" of compliance, Memorandum in Opposition, p. 7, Docket No. 53, the statute on its face is clear. The conduct prohibited by § 76-10-1205 will only apply in the most unusual of situations. For example, the ISP user agreement or service contract would have to have an express requirement that the end-user receive pornographic material as a condition of sale or, alternatively, that a penalty would be imposed against the end-user if pornographic material were refused after the service contract went into effect.

Plaintiffs allege standing to challenge § 76-10-1205 on both Commerce Clause and First Amendment Grounds. Plaintiffs IPNS of Utah, Inc. and RigidTech.com, Inc. argue that as hosting companies serving customers both in and outside of Utah, § 76-10-1205 subjects them to the likelihood of inconsistent state regulations of the type prohibited by the Commerce Clause. Similarly, Plaintiffs The Sexual Health Network, Inc., CBLDF, PMA, AAP, FTRF, and ABFFE argue that because they post content on the Internet with non-Utah hosting companies, they also have standing to challenge, under the Commerce Clause, § 76-10-1205's attempt to regulate commerce that takes place outside of the state. But none of these Plaintiffs have sufficiently pled an injury-in-fact. Missing from all of Plaintiffs' arguments is any claim that any of them require acceptance by end-users of pornographic material as a condition of sale or to avoid a penalty under a sales contract, or that they plan to do so in the near future. Therefore, none of these Plaintiffs have demonstrated a credible and well-founded fear of being subject to differing state regulations as a result of § 76-10-1205, and all presently lack standing.

15

In addition, all fourteen Plaintiffs allege standing to challenge § 76-10-1205 on First Amendment grounds. Plaintiffs argue that because § 76-10-1205 does not include the same overblocking provision provided for in § 76-10-1231[1] (which requires ISPs offering a filtering service to not interfere with access to Internet content for consumers who do not request filtering), ISPs that choose to comply with § 76-10-1205 by using "in-network" filtering may unintentionally block other constitutionally protected web sites in violation of their First Amendment rights of free speech. Particularly, Plaintiffs Utah Progressive Network Education Fund, Inc. and Andrew McCullough allege that because their web sites are hosted on web servers that also host web sites that contain sexual content, they are especially at risk of overblocking caused by § 76-10-1205. Therefore, Plaintiffs Utah Progressive Network Education Fund, Inc., Andrew McCullough, and all other Plaintiffs allege standing to challenge § 76-10-1205 under the First Amendment.

Plaintiffs' First Amendment argument lacks merit. As stated above, § 76-10-1205 is a narrow prohibition applying in only the most unusual of situations. A person complies with § 76-10-1205 by not inducing acceptance of pornographic material by an end-user as a condition of a sale or to avoid a penalty. It is difficult to understand how implementing a filtering service would allow an ISP to comply with § 76-10-1205. Regardless of this concern, all ISPs implementing "in-network" filters are under a legal duty under § 76-10-1231 to ensure that the

---

[1]§ 76-10-1231 states:
(1)(a) Upon request by a consumer, a service provider shall filter content to prevent the transmission of material harmful to minors to the consumer.....
....
(3)(a) A service provider may comply with subsection (1) by:
    (i) providing in-network filtering to prevent receipt of material harmful to minors, *provided that the filtering does not affect or interfere with access to Internet content for consumers who do not request filtering under Subsection (1)* ...." (emphasis added).

16

filters they implement "not affect or interfere with access to Internet content for consumers who do not request filtering." Utah Code Ann. § 76-10-1231(3)(a)(i) (2007). An ISP cannot comply with one section of the Utah Harmful to Minors Act by violating another. Therefore, Plaintiffs have not demonstrated a credible fear of being subjected to overblocking under § 76-10-1205, and all lack standing.

### Conclusion

For the reasons stated above, the Court finds that under the present circumstances and state of the pleadings, Plaintiffs The King's English, Sam Weller's Zion Bookstore, IPNS of Utah, LLC, RigidTech.com, Inc., Utah Progressive Network Education Fund, Inc., and Andrew McCullough lack standing to challenge any of the provisions of the Utah Harmful to Minors Act as amended and DISMISSES them from this case. The Court also finds that none of the Plaintiffs have standing to challenge § 76-10-1231 or § 76-10-1205; therefore, these claims are DISMISSED from this case. The remaining eight Plaintiffs have standing with regard to § 76-10-1206 and § 76-10-1233.

Defendants Motion to Dismiss is GRANTED in part and DENIED in part consistent with this opinion.

IT IS SO ORDERED.

DATED this _28th_ day of November, 2007.

Dee Benson
United States District Judge

17