JERROLD S. JENSEN (#1678)
Assistant Attorney General
MARK BURNS (#6706)
Assistant Attorney General
MARK L. SHURTLEFF (#4666)
Attorney General
Attorneys For Plaintiff
160 East 300 South, 5th Floor
P.O. Box 140857
Salt Lake City, Utah  84114-0857
Telephone:  (801) 366-0353

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE KING'S ENGLISH, INC., et al.,<br><br>            Plaintiffs<br><br>vs.<br><br>MARK SHURTLEFF, In his official capacity as ATTORNEY GENERAL OF THE STATE OF UTAH, et al.,<br><br>            Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE RELIEF TO FILE A SECOND AMENDED COMPLAINT**<br><br>Case No. 2:05CV00485<br><br>Judge Dee Benson |

Plaintiffs have filed a Motion for Reconsideration and, alternatively, a Motion for Leave to File a Second Amended Complaint.  Both Motions are designed to accomplish the same thing – overturning this Court's ruling of November 28, 2007,[1] and put all of the previously dismissed Plaintiffs and causes of action back in the case.

---

[1] All references herein to this Court's "ruling," "prior ruling," "decision," or "Opinion and Order" are to this Court's Opinion and Order of November 28, 2007.

Plaintiffs' Memorandum in Support of their motions assert that this Court erred in its rulings dismissing certain Plaintiffs challenging Utah's Harmful to Minors statute for lack of standing. The allegations of error relate to Utah Code Ann. § 76-10-1205 (inducing acceptance of pornographic material), § 1206 (dealing in material harmful to a minor), § 1231 (filtering). To deny Plaintiffs' Motion for Reconsideration and grant Plaintiffs' Motion for Leave to File a Second Amended Complaint is to essentially grant the Motion for Reconsideration. Either way, Plaintiffs are attempting to get a second (or third) bite at the apple.

## ISSUE

Six of fourteen Plaintiffs and two of four causes of action were dismissed from this case by this Court's Order of November 28, 2007. Plaintiffs now file a Motion for Reconsideration, or in the alternative a Motion for Leave to File a Second Amended Complaint, for the purpose of reinstating those six Plaintiffs and two causes of action. Should this Court now reverse its prior Order, which addressed the same issues being presented by these two Motions, and grant either Motion?

## I. PROCEDURAL BASIS FOR DENYING THE MOTIONS

### A. Plaintiffs' Motion for Reconsideration

Plaintiffs' Motion for Reconsideration revisits the same issues already addressed and dismissed by the Court. They assert the same issues they asserted in their original Memorandum in Opposition to Defendants' Motion to Dismiss, dated July 2, 2007, Docket No. 53.

It is not an appropriate use of a Motion to Reconsider "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000), citing Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991). "The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.'" Van Skiver, 952 F.2d at 1243. Advancing new arguments or supporting facts which are otherwise available for presentation when the original motion was briefed is likewise inappropriate. *Id.*

Based on the fact that there is no Motion for Reconsideration in the Federal Rules of Civil Procedure, and the denial of the same by the Tenth Circuit, Plaintiffs' Motion for Reconsideration should be denied on procedural grounds alone.

**B.      Plaintiffs' Motion for Leave to File a Second Amended Complaint**

All that has changed in Plaintiffs' Second Amended Complaint is that the Complaint has been tweaked. No significant new facts are alleged. The only "new" facts alleged regarding The King's English and Sam Weller's Bookstore are that The King's English believes some of the books they carry "could be deemed harmful to minors by some prosecutors in some Utah counties," ¶ 148, and Sam Weller's regards the "marketing and the selling of books over the Internet" to be an "important component to a viable book selling business today," ¶ 150. That's it. No new facts are even offered as to the remaining previously dismissed Plaintiffs.

Since this Court has already ruled that six of the Plaintiffs do not have standing, and the only thing the Second Amended Complaint does is to reinstate the previously dismissed Plaintiffs, the Motion for Leave to Amend should also be denied.

## II. SUBSTANTIVE BASIS FOR DENYING THE MOTIONS

### A. Standing

The issue here is standing. The previously dismissed Plaintiffs did not allege a credible fear of being prosecuted in their first Amended Complaint and they do not overcome that defect in their Motion for Reconsideration or Second Amended Complaint. They simply do not demonstrate an injury-in-fact. "A federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . .'" Warth v. Seldin, 422 U.S. 490, 499 (1975).

As the Tenth Circuit has noted, "[p]articularly important, for present purposes, is the requirement of an 'injury in fact,' which the Supreme Court has defined as 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural.'" Initiative and Referendum Inst. v. Walker, 450 F.3d 1082, 1087 (10th Cir. 2006), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The Plaintiffs previously dismissed simply do not meet that standard. Mere allegations of a subjective chill are "not an adequate substitute for claim of specific present objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 13-14 (1972). The chilling effect, to amount to an injury-in-fact, must arise from "an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences flowing from the statute's enforcement." D.L.S. v. Utah, 374 F.3d 971, 975 (10th Cir. 2004).

### B. Section 1231 – Filtering

In their Memorandum in Support of their motions Plaintiffs' reference ACLU v. Johnson, 194 F.3d 1149 (1999) and American Libraries Ass'n v. Pataki, 969 F.Supp. 160 (S.D.N.Y. 1997)

4

for the proposition that "federal courts have regularly invalidated State regulations of, or burdens on, the Internet." They cite the Pataki case for the proposition that the Internet "requires a cohesive national scheme of regulation." Pataki, 969 F.Supp. at 182. Memorandum, p. 2.

At this point in time, those cases are of minimal value. As this Court noted last year, the Pataki and Johnson cases "were decided before Congress enacted CAN-SPAM and are of limited value in the discussion of whether Congress allowed for simultaneous State regulation." Free Speech Coalition v. Shurtleff, 2007 WL 922247, *11 (D. Utah Mar. 23, 2007) (slip op.). The same can be said for subsequent filtering legislation passed by Congress a year after the Pataki decision.

Public Law 105-277, which became effective October 21, 1998, included in the federal Communications Act the "Internet Tax Freedom Act," 47 U.S.C. § 151-1101 et seq., and an Internet provision for the "Protection for private blocking and screening of offensive material." 47 U.S.C. § 230. The Internet Tax Freedom Act, 47 U.S.C. § 151-1100 et seq., creates a moratorium prohibiting States from imposing Internet access taxes on ISPs,[2] – unless those ISPs do not offer screening software[3] to their customers. 47 U.S.C. § 151-1101(e)(1). In other words, States are precluded from taxing ISPs like telephone companies; however, if an ISP does not offer a filtering system to its customers they may be so taxed. A copy of the "Internet Tax Freedom Act" is attached hereto as Exhibit A.

---

[2] "No State or political subdivision thereof shall impose any of the following taxes during the period beginning November 1, 2003, and ending November 1, 2014: (1) Taxes on Internet access." 47 U.S.C. § 151-1101(a)(1).

[3] Screening software is defined as "software that is designed to permit a person to limit access to material on the Internet that is harmful to minors." 47 U.S.C. § 151-1101(e)(2)(C).

In the same legislation Congress makes "findings" and sets the "policy" of the United States regarding the Internet. This is the "national scheme" called for in <u>Pataki</u>. Section 230 of 47 U.S.C. states "it is the policy of the United States . . . (4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and (5) to insure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking or harassment by means of computer." 47 U.S.C. § 230(a) & (b)(4) & (5). Specifically, 47 U.S.C. § 230 states in relevant part:

> (d) Obligations of interactive computer service
>
> A provider of interactive computer service shall, at the time of entering an agreement with a customer for the provision of interactive computer service and in a manner deemed appropriate by the provider, notify such customer that parental control protections (such as computer hardware, software, or filtering services) are commercially available that may assist the customer in limiting access to material that is harmful to minors. Such notice shall identify, or provide the customer with access to information identifying, current providers of such protections.
> . . . .
> (e) Effect on other laws
> . . . .
> (3) State law
> <u>Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section.</u> No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

47 U.S.C. § 230(d) & (e)(3). (Emphasis added). A copy of 47 U.S.C. § 230 is attached hereto as Exhibit B.

So a year after the <u>Pataki</u> decision calls for a "cohesive national scheme of regulation," which Plaintiffs want to say clearly deems the Utah statute unconstitutional, Congress passes

6

legislation stating that the policy of the United States regarding the Internet is to require ISPs to notify customers of the availability of filtering software to allow State regulation of the Internet consistent with federal law.

Section 1231 of the Utah law provides that "upon request by a consumer," an ISP shall filter content to prevent the transmission of material harmful to minors to the consumer. § 76-10-1231(1)(a). The service provider complies with Subsection (1)(a) if it uses "a generally accepted and commercially reasonable method of filtering." § 76-10-1231(1)(b). An additional amendment to the Act passed in the 2008 General Legislative Session made compliance with Section 1231 even easier for ISPs. Now all an ISP has to do is provide the consumer with a "clear and conspicuous hyperlink" or a written statement referring the user to a third-party for the filtering software to comply with Section 1231. It is logical to conclude that the software would be stocked and supported by the third-party, making any impact on the ISP de minimus.[4]

Citing ACLU v. Johnson, 194 F.2d 1149 (10th Cir. 1999), Plaintiffs assert this Court was wrong when it concluded that they lacked standing to challenge Utah Code Ann. § 76-10-1231.

---

[4] The 2008 Amendment states:

> A service provider may comply with Subsection (1) by:
> (i) providing in-network filtering to prevent receipt of material harmful to minors, provided that the filtering does not affect or interfere with access to Internet content for consumers who do not request filtering under Subsection (1); or
> (ii) providing software, [or] engaging a third party to provide software, *or referring users to a third party that provides filtering software, by providing a clear and conspicuous hyperlink or written statement*, for [contemporaneous] installation on the consumer's computer that blocks, in an easy-to-enable and commercially reasonable manner, receipt of material harmful to minors.

House Bill 18, Sub. 1 (2008 General Session of the Utah Legislature), signed by the Governor on March 18, 2008.

Plaintiffs claim that Section 1231 attempts to "regulate the Internet" in violation of their rights under Commerce Clause of the United States Constitution. But filtering is different than the circumstances in Johnson because Congress has expressly allowed simultaneous State regulation with respect to Internet filters and filtering technology consistent with federal law.

"When Congress so chooses, State actions that it plainly authorizes are invulnerable to constitutional attack under the commerce clause." Northeast Bancorp, Inc. v. Board of Governors, 472 U.S. 159, 174 (1985). The Supreme Court has also made it clear that "the States retain authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." Lewis v. BT Investment Managers, Inc., 447 U.S. 27, 36 (1980). In short, the dormant aspect of the Commerce Clause was not intended "to cut the States off from legislating on all subjects relating to health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country." Huron Portland Cement Co. v. Detroit, 362 U.S. 440, 443-44 (1960). *See* Free Speech Coalition, 2007 WL 922247, *11.

For the foregoing reasons, this Court was correct in concluding that the Internet service provider Plaintiffs lack standing to assert the Act violates the Commerce Clause or any other provision of the United States Constitution.

**C.     Section 1205 – Inducing Acceptance of Pornographic Material**

Utah Code Ann. § 76-10-1205 prohibits a person from "inducing" an end-user to receive pornographic material as a condition of a sale for other items. None of the Plaintiffs assert, in either the Motion for Reconsideration or the Motion for Leave, that they "induce" anyone into accepting pornographic material by the purchase of other items. Therefore, all Plaintiffs lack standing to assert a credible claim of prosecution against them under this section.

Next, the Plaintiffs reargue that this section is vague. Defendants strenuously disagree. As this Court stated in its Opinion and Order: "the statute on its face is clear." Opinion, p. 15. Plaintiffs' confusion comes from injecting the concept of "blocking" into the equation. Both of the examples used by Plaintiffs in their Memorandum are dependent upon a consumer demanding that an ISP or web hosting company "block" certain offensive material, and the ISP or web hosting company refuses to do so. But the statute nowhere contains a blocking provision.[5] Thus, Plaintiffs have added an element which does not exist in the statute and then claim that the statute is vague.

Because none of the Plaintiffs assert they are attempting to induce anyone into accepting pornographic material by the purchase of other items. None of the Plaintiffs have standing to challenge this section.

D.  **Section 1206 – Dealing in Material Harmful to a Minor**

In its Opinion and Order this Court dismissed The King's English and Sam Weller's Zion Bookstore on the basis that their fear of prosecution was not credible. In the 30 years the harmful to minors statute has been on the books in Utah, no case – or even threat of a case – has been brought against these Plaintiffs. But in their attempt to have the Court reverse its decision, they argue, again, that there are differences between brick-and-mortar stores and the Internet.

Differences there may be, but under § 1206 those differences inure more to the detriment of the brick-and-mortar store than the Internet. For the sake of argument, let's assume that at

---

[5]The original Bill filed in 2005 (H.B. 260) did having a blocking component. Section 1232 of that Bill gave customers the legal right to require ISPs to block certain websites, which the ISPs were required to do. That section was completely deleted in H.B. 5 (2007).

9

least one of the books The King's English or Sam Weller's Bookstore carries may be found by a court to be material harmful to minors.[6]

Now, what is the difference between a minor viewing the supposed offensive book in the bookstore and viewing it on Plaintiffs' website on the Internet? The difference is: in the brick-and-mortar store the proprietor, or an employee of the proprietor, at least has an opportunity of "knowing" whether the viewer is underage. On the Internet, no such opportunity exists.

Section § 1206 of Utah's harmful to minors statute clearly states:

> A person is guilty of dealing in material harmful to minors when, **knowing** that a person is a minor, or **having negligently failed** to determine the proper age of a minor. . .

Utah Code Ann. § 76-10-1206(1) (emphasis added). Given the present structure of the Internet, Defendants are totally perplexed how The King's English or Sam Weller's Bookstore could be charged under the statute with either "knowing that a person is a minor," or "having negligently failed to determine the age of a minor" when a minor views their website.

How a credible case could be brought against any of the Plaintiffs under this statute because a minor viewed their website is a total mystery to these Defendants. It is not that the chances are slim or even remote, but totally non-existent.

As the Court has previously found, these Plaintiffs simply do not allege a credible threat of prosecution and therefore do not have standing to challenge the statute.

---

[6] None of the books listed by Plaintiff The King's English have ever been found by a court in the State of Utah to be material harmful to minors. Thus, any categorization of such is an assumption at best. In Utah, magazine and video shops that carry material harmful to minors cordon off sections of their store which contain the objectionable material. Neither The King's English nor Sam Weller's has such a cordoned section, meaning they obviously did not regard the books being cited in the Complaint as material harmful to a minor prior to the filing of this case.

## CONCLUSION

Plaintiffs' Motion for Reconsideration and Motion for Leave to File a Second Amended Complaint are duplicative. The issues presented in both Motions have been previously presented to this Court and decided by this Court. Therefore, both Motions should be denied.

DATED this  16th  day of April, 2008.

        MARK L. SHURTLEFF
        Attorney General


        /s/Jerrold S. Jensen
        JERROLD S. JENSEN
        Assistant Attorney General

# CERTIFICATE OF SERVICE

This is to certify that copies of the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE RELIEF TO FILE A SECOND AMENDED COMPLAINT** was served by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael A. Bamberger
mbamberger@sonnenschein.com

Wesley D. Felix
felixw@howrey.com

Marina B. Lowe
mlowe@acluutah.org

John B. Morris , Jr
jmorris@cdt.org

Zachary J. Weyher
weyherz@howrey.com

    /s/Sherri L. Cornell
Secretary