| | |
|---|---|
| **HOWREY LLP** | **AMERICAN CIVIL LIBERTIES UNION** |
| Wesley D. Felix (6539) | **OF UTAH FOUNDATION, INC.** |
| Zachary J. Weyher (10846) | Marina Baginsky Lowe (11482) |
| 170 South Main Street, Suite 400 | 355 North 300 West |
| Salt Lake City, UT 84101 | Salt Lake City, UT 84103 |
| Telephone: (801) 533-8383 | Telephone: (801) 521-9682 |
| Facsimile: (801) 531-1486 | Facsimile: (801) 532-2850 |
| | |
| **CENTER FOR DEMOCRACY** | **SONNENSCHEIN NATH &** |
| **& TECHNOLOGY** | **ROSENTHAL LLP** |
| John B. Morris, Jr. (Pro Hac Vice) | Michel A. Bamberger (Pro Hac Vice) |
| 1634 Eye Street, NW #1100 | 1221 Avenue of the Americas |
| Washington, DC 20006 | New York, NY 10020 |
| Telephone: (202) 637-9800 ext 116 | Telephone: (212) 768-6700 |
| Facsimile: (202) 637-0968 | Facsimile: (212) 768-6800 |

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE KING'S ENGLISH, et. al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil No. 2:05CV00485 DB |
| vs. | ) |
| | ) Judge Dee Benson |
| MARK SHURTLEFF, et. al., | ) |
| | ) Magistrate Judge Samuel Alba |
| | ) |
| | ) |
| Defendants. | |

### PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

This reply briefly responds to the contentions of the State in their response to plaintiffs'

motion for reconsideration or, in the alternative, for leave to file a second amended complaint.

I. PLAINTIFFS' MOTION FOR RECONSIDERATION OR IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT IS PROCEDURALLY SOUND.

   A. A Motion for Reconsideration Is Procedurally Distinct From A Motion for Leave to File a Second Amended Complaint.

Defendants' claim that Plaintiffs' Motion For Reconsideration and Motion For Leave to File A Second Amended Complaint are one and the same (*see* Defendants' Response, p. 2) is unfounded. Courts within the Tenth Circuit treat motions for reconsideration and in the alternative, motions for leave to file an amended complaint as two separate requests, seeking distinct legal relief. *Sheldon v. Khanal*, No. 07-2112-KHV, slip op. at *2 (D. Kan, Feb. 19, 2008) (refusing to treat motion for leave to amend as dependent on motion for reconsideration); *Garrett v. Endeavor Energy Resources*, No. 05-CV-0399-CVE-PJC (N.D. Okla., Aug. 8, 2006). As such, Plaintiffs respectfully request that the Court consider Plaintiffs' motions independently.

   B. The Tenth Circuit Contemplates The Granting Of A Motion For Reconsideration When Justice So Requires Or To Remedy A Mistake.

Plaintiffs' request for the Court to reconsider its order on Defendants' Motion to Dismiss is proper under the Federal Rules of Civil Procedure. *Wilson v. Al McCord Inc.*, 858 F.2d 1469, 1478 (10th Cir. 1988) (stating that the Tenth Circuit construes a motion to reconsider as a motion pursuant to Federal Rules of Civil Procedure 59 or 60).

      i. Plaintiffs' motion for reconsideration should be granted in order to promote justice.

Defendants' Response is quick to point out when a motion for reconsideration is not appropriate. *See* Defendants' Response, p. 3. Conspicuously absent from Defendants' brief is any discussion of when courts grant such motions. Federal Rule of Civil Procedure Rule 60(b) provides for "relief from a judgment or order for . . . any other reason justifying relief." FED. R.

CIV. P. 60(b)(6). Courts have interpreted this catchall clause as a means by which to empower judges to "vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. U.S.*, 335 U.S. 601, 614-615 (1949). Indeed, the Tenth Circuit has recognized that Rule 60(b)(6) gives courts a "grand reservoir of equitable power to do justice in a particular case." *Pelican Prod. Co. v. Marino*, 893 F.2d 1143, 1147 (10th Cir. 1990) (quoting *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975) (en banc)). Courts should construe this rule "liberally . . . when substantial justice will thus be served." *McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006) (quoting *Pierce*, 518 F.2d at 722).

Here, application of Rule 60(b)(6) is apt. Plaintiffs filed the pending motion in an attempt to address concerns elicited from the bench during the hearing on Defendants' Motion to Dismiss on October 25, 2007, and reflected in the opinion of the court. For example, the Opinion states that King's English and Sam Weller have not credibly pled that the materials they distribute meet the definition of "harmful minors". Although, on oral argument, the state responded to the Court's question that they "probably" did.

    ii.  Plaintiffs' motion for reconsideration is properly sought as the Court misapprehended its position, the facts or applicable law.

Within the Tenth Circuit, a "motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). In *Skiles v. County of Rawlins*, the court reconsidered its earlier ruling denying the defendant's motion to dismiss. No. 06-4040-JAR, slip op. at *1 (D. Kan., March 22, 2007). The court granted the defendant's motion for reconsideration because it was accompanied by more "thorough argument" and analysis on points that had "troubled the Court." *Id.* at *2, 3.

As set forth more fully below, Plaintiffs, by way of this motion, seek to more thoroughly answer questions bearing on standing that appeared to trouble the Court in the hearing on Defendants' Motion to Dismiss on October 25, 2007, and in its ruling on the same, issued on November 29, 2007. Accordingly, Plaintiffs' motion is proper.

      C.      A Motion For Leave To File An Amended Complaint Should Be Liberally Granted And Is Properly Sought Where An Order Identifies Deficiencies Which Could Be Cured Through Amendment.

Even if this Court decides to deny the Motion for Reconsideration, Plaintiffs request that the Court grant leave to file a second amended complaint in order to address concerns from the Court as to standing. Leave to amend a complaint should be "freely give[n] . . . when justice so requires." FED. R. CIV. P. 15(a)(1)(2). Within the Tenth Circuit, leave to amend has been granted where to do so would cure problems with the initial complaint. *Garrett v. Endeavor Energy Resources, LP*, No. 05-CV-0399-CVE-PJC, at *1 (granting plaintiff leave to file an amended complaint "to cure deficiencies noted by the Court in its opinion and order dismissing plaintiff's case).

Leave to amend is similarly appropriate here, where the additional facts and analysis Plaintiffs seek to assert respond directly to this Court's order determining that Plaintiffs' First Amended Complaint did not adequately allege facts sufficient to establish standing for certain of the Plaintiffs on certain claims.

Should this Court grant Plaintiffs' Motion for Leave to Amend, no prejudice would flow to Defendants. Plaintiffs have repeatedly accommodated requests from Defendants to halt litigation in order to resolve this matter legislatively. As a result, the legal proceedings in this

4

case have not progressed beyond the initial stages of litigation. Accordingly, justice favors granting Plaintiffs' Motion for Leave to Amend.

II.     PLAINTIFFS IPNS OF UTAH LLC AND RIGIDTECH.COM, INC., AS WELL AS CONTENT PROVIDING PLAINTIFFS, HAVE STANDING TO CHALLENGE SECTIONS 1205 UNDER THE PRESENT COMPLAINT.

In their motion, Plaintiffs highlighted the vagueness of this provision, as applied to ISPs and web hosting companies, and the potentiality of substantial overbreadth, which that vagueness creates. The Court set forth one example of the possible application of this provision, namely an express contractual requirement forcing an end user to receive pornography. Plaintiffs stated in their motion that the provision, if so limited, would be clear and appropriate, albeit of miniscule impact. But Defendants do not address whether or not 1205 is so limited and the Court did not limit the section to the example, giving IPNS and RigidTech standing to challenge its vagueness. Moreover, Plaintiffs who are content publishers -- both in and outside of Utah -- have standing to challenge the applicability of Section 1205. Given the vagueness of the Section, there is a great risk that protected speech -- both inside and outside of Utah -- will be chilled.

III.    PLAINTIFFS IPNS OF UTAH LLC AND RIGIDTECH.COM, INC. HAVE STANDING TO CHALLENGE SECTION 1231 UNDER THE PRESENT COMPLAINT.

Defendants argue at length that, by reason of a legislative preamble to the federal Internet Tax Freedom Act effective in 1998, the Tenth Circuit's prior ruling in *ACLU v. Johnson*, 194 F.3d 1149 (1999) that disparate state regulation of the Internet violates the Commerce Clause no longer is binding. To the contrary, at least two Circuits, years after that Congressional preamble, have held similarly to the Tenth Circuit in *Johnson. See American Booksellers Foundation v. Dean,* 342 F.3d 96, 104 (2d Cir. 2003) (cited in Plaintiffs motion at p.3 fn. 2); *PSInet, Inc. v. Chapman*, 362 F.3d 227, 239 ff., *reh. den*. 372 F.3d 5671 (4th Cir. 2004). Moreover, the case

5

relied on by defendants -- *Free Speech Coalition v. Shurtleff*, 2007 WL 922247, *11 (D.Utah Mar. 23, 2007) ( slip op.) -- dealt with the CAN-SPAM Act, which contains specific provisions relating to state laws -- provisions that are not at issue in this case.

But, more importantly, Defendants argue as if Section 1231 were similar to the federal filtering obligations imposed on ISPs. The core focus of Plaintiffs' motion is that Section 1231 is not similar to federal law and indeed goes far beyond federal law. It requires that ISPs to submit their filtering system to the Utah Department of Consumer Protection annually for review and testing. The potentiality of testing and review by the various states, with each state applying its own and possibly inconsistent standards, graphically highlights the burden imposed by this section on interstate commerce.

In their response, Defendants fail to mention, much less address, this critical fact.

IV. PLAINTIFFS THE KING'S ENGLISH AND SAM WELLER'S ZION BOOKSTORE HAVE STANDING TO CHALLENGE SECTION 1206

Based on the assumed fact that neither of these Plaintiffs had never been charged with violation of the harmful to minors laws in their bricks and mortar Salt Lake City stores, the Court found these plaintiffs' fear of prosecution under section 1206 unreasonable. In their motion for reconsideration, Plaintiffs set forth a number of crucial differences when the harmful to minors standard is applied to the Internet and when it is applied to stores. As a result of these differences parties such as King's English and Sam Weller's, whose law-abiding intent is demonstrated by the lack of such charges with respect to their stores, reasonably fear prosecution with respect to their Internet offerings. The State responds by contending that, in the context of the Internet, they are "totally perplexed how The King's English or Sam Weller's Bookstore

could be charged with either 'knowing that a person is a minor' or 'having negligently failed to determine the age of a minor' when a minor views their website." Defendants' Response p.10.

Similar arguments were made to and rejected by the U.S. Supreme Court in *Reno v. ACLU*, 521 U.S. 844 (1997) and the Tenth Circuit in *Johnson*. As the Supreme Court stated in *Reno,* "[g]iven the size of the potential audience for most messages [on the Internet], in the absence of a viable age verification system, the sender must be charged with knowing that one or more minors will likely view it." *Reno*, 521 U.S. at 876. In light of that imputed knowledge, Plaintiff bookstores would be jeopardized under either the "knowledge" or "negligence" standards in 1206. Further, while the State, as New Mexico did in *Johnson*, tries to limit the Internet application of 1206 to Internet communications directed to a known specific minor, as in *Johnson* that is not the plain meaning of the statute and, as in *Johnson*, the contention should be rejected. See *Johnson*, 194 F.3d at 1159.

Thus, in light of the fact that in more conservative parts of Utah mainstream books such as "My Sister's Keeper" by Jodi Picoult,[1] "Voyage of the Basset" by Christensen, St James and Foster,[2] "Jaws" by Peter Benchley[3] and "A Clockwork Orange" by Anthony Burgess[4] have been challenged as inappropriate for minors, law-abiding bookstores such as King's English and Sam Weller's have a reasonable fear of prosecution. If amended section 1206 as amended is upheld,

---

[1]  Deseret News, April 20, 2008, "Book is pulled from Tabiona college prep class" (http://deseretnews.com/article/1,5143,695272089,00.html (viewed 5/4/2008))

[2]  Doyle, "Banned Books" (American Library Association 2007) p.38.

[3]  *Id.* at 24.

[4]  *Id.* at 33.

their fear of prosecution would force them to self-censor such materials and therefore restrict the access of adults and older minors to such materials

## CONCLUSION

Plaintiffs respectfully request the Court grant their motion for reconsideration or, in the alternative, grant leave to file a second amended complaint.

DATED this 6th day of May, 2008.

**HOWREY LLP**
170 South Main Street, Suite 400
Salt Lake City, UT 84101


By /s/ Zachary J. Weyher
    Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 6th day of May 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice electronically to:

Mark E. Burns
markburns@utah.gov

Jerrold S. Jensen
JerroldJensen@utah.gov, penicox@utah.gov

                                    /s/ Brittani D. Martin