FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH - CENTRAL DIVISION

2008 AUG -8  P 3: 08

DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

| THE KINGS ENGLISH, INC., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>MARK SHURTLEFF, In his official capacity as ATTORNEY GENERAL OF THE STATE OF UTAH, et al.,<br><br>Defendants. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:05-CV-485<br><br>Judge Dee Benson |
|---|---|

Plaintiffs, which originally consisted of fourteen individuals and entities who are content and access providers on the Internet, brought the present lawsuit challenging four provisions of the Utah Harmful to Minors Act on First Amendment and/or Commerce Clause grounds. On November 28, 2007, this Court issued a Memorandum Opinion and Order dismissing six of the fourteen Plaintiffs and two of the four causes of action based on lack of standing. On February 19, 2008, Plaintiffs filed a Motion for Reconsideration or, in the alternative, for Leave to File a Second Amended Complaint in an effort to have four of the dismissed plaintiffs and both of the dismissed statutory causes of action reinstated. Oral argument on this motion was held on July 28, 2008. Plaintiffs were represented by John B. Morris, Wesley D. Felix, and Zachary J. Weyher. Defendants were represented by Jerrold S. Jensen and Mark Burns. The Court now issues the following Opinion and Order.

**Background**

Since the early 1970s, Utah law has prohibited persons from intentionally distributing to minors material that is deemed "harmful to minors." *See* Harmful to Minors Act, Utah Code Ann. § 76-10-1206 (2007). In 2005, the Utah Legislature extended this prohibition to the Internet. *See* H.B. 260, 56th Leg., Gen. Sess. (Utah 2005), *amended by* H.B. 5, 57th Leg., Gen.

Sess. (Utah 2007). The Utah Harmful to Minors Act now requires that internet service providers ("ISPs"), web hosts, and content providers take measures to restrict the ability of minors to access pornography on the Internet.

On April 30, 2007, Plaintiffs filed an Amended Complaint claiming that the Utah Harmful to Minors Act as amended violates on its face the United States Constitution. Dkt. No. 43. Plaintiffs challenged four provisions of the Act:

1. Utah Code § 76-10-1231 requiring ISPs to block access to all "harmful to minors" material upon customers' requests (challenged on Commerce Clause grounds);

2. Utah Code § 76-10-1205 requiring that ISPs and others not induce acceptance by customers of "pornographic" material (challenged on both First Amendment and Commerce Clause Grounds);

3. Utah Code § 76-10-1206 expanding Utah law with respect to the distribution to minors of "harmful to minors" material to apply to distribution on the Internet (challenged on First Amendment grounds); and

4. Utah Code § 76-10-1233 requiring Utah-connected internet providers to self-evaluate and label the content of their speech, or to restrict access to the speech (challenged on First Amendment grounds).

In response, on May 31, 2007, Defendants filed a Motion to Dismiss Plaintiffs' Amended Complaint arguing that Plaintiffs lacked standing with regard to each of the above provisions. Dkt. No. 48. On November 28, 2007, the Court issued a Memorandum Opinion and Order granting in part and denying in part Defendants' Motion. The Court found that Plaintiffs The King's English, Sam Weller's Zion Bookstore, IPNS of Utah, LLC, RigidTech.com, Inc., Utah Progressive Network Education Fund, Inc., and Andrew McCullough lacked standing to challenge any of the above provisions and dismissed them from the case. The Court found that the other eight Plaintiffs did have standing to challenge § 76-10-1206 and § 76-10-1233, but none of the Plaintiffs had standing to challenge § 76-10-1231 and § 76-10-1205, and the causes

of action based on these provisions were also dismissed. As a result, eight Plaintiffs were left to challenge two statutory provisions – § 76-10-1206 and § 76-10-1233.

Plaintiffs now ask the Court to reconsider three aspects of its November 28, 2007 ruling. First, Plaintiffs contend that IPNS of Utah, LLC and RigidTech.com, Inc. have standing to challenge § 76-10-1231 under the Commerce Clause and thus both them and the causes of action based on this provision should be reinstated. Second, Plaintiffs argue that the claim based on § 76-10-1205 should be reinstated because the statute is vague and thus could possibly apply to all Plaintiffs. Third, Plaintiffs argue that The King's English and Sam Weller's Zion Bookstore should be reinstated as having standing to challenge § 76-10-1206.

## Legal Standard

A motion to reconsider is warranted only in limited circumstances. These include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Plaintiffs do not contend that there has been a change in the controlling law or discovery of new evidence. Rather, Plaintiffs have filed the present Motion for Reconsideration in an attempt to correct what they perceive as "clear error" by the Court. *Id.* ("a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.").

## Discussion

### I. Utah Code Ann. § 76-10-1231

Utah Code § 76-10-1231 requires that upon request by the consumer, all Utah-based ISPs provide a filtering service – or provide information whereby the consumer may obtain a filtering service from a third party – to prevent the transmission to the consumer of material "harmful to

minors." Utah Code Ann. § 76-10-1231 (2008). It also provides that the Division of Consumer Protection annually test the effectiveness of such systems, the results of which are to be made available to the public. *Id.* § 76-10-1231(7). Plaintiffs IPNS of Utah, LLC, and RigidTech.com, Inc., both of whom are Utah-based ISPs providing internet access and web hosting services to customers in and outside of Utah, once again argue that they have standing to challenge § 76-10-1231 because it imposes costly burdens and inconsistent state regulations in violation of the Commerce Clause.

In previously addressing this argument, the Court found that Plaintiffs had failed to demonstrate an injury-in-fact. Order, Nov. 28, 2007 at 14, Dkt. No. 63. Specifically, the Court could not identify any "costly burdens" of compliance because the statute allows ISPs to charge the consumer for the cost of filtering, thus offsetting any costs. *Id.* With regard to the testing requirement imposed by § 1231, the Court found that Plaintiffs' argument of inconsistent state regulations was premature. To date, the Division for Consumer Protection has yet to determine how to implement this subsection and has not made any determination regarding the testing criteria that will be imposed. Therefore, any allegation at this point of inconsistent state regulation is pure speculation and does not meet the "case or controversy" requirement of Article III. *Id.*

Plaintiffs argue that the Court's prior decision misapprehends both the nature of their Commerce Clause challenge and the burdens imposed. Citing several federal court decisions, Plaintiffs contend that any state regulation of the Internet violates the Commerce Clause.[1] This is

---

[1] *PSINet v. Chapman*, 362 F.3d 227 (4th Cir. 2004); *American Booksellers Found. v Dean*, 342 F.3d 96 (2d Cir. 2003); *ACLU v. Johnson*, 194 F.3d 1149 (10th Cir. 1999); *Southeast Booksellers Ass'n v. McMaster*, 282 F.Supp. 2d 389 (D.S.C. 2003); 371 F.Supp. 2d 773 (D.S.C. 2005); *CDT v. Pappert*, 337 F.Supp. 2d 606 (E.D. Penn. 2004); *Cyberspace Communications, Inc. v. Engler*, 142 F.Spp. 827 (E.D. Mich. 2001).

4

particularly true, Plaintiffs contend, in this case, where what is deemed "harmful to minors" under community standards in Utah is almost certain to be different than what is deemed "harmful to minors" under community standards in another state, making the risk of inconsistent regulations an almost absolute certainty. In making this argument, Plaintiffs rely on the Tenth Circuit decision in *ACLU v. Johnson*, 194 F.3d 1149 (1999), which provides that "certain types of commerce have been recognized as requiring national regulation. The Internet is surely such a medium." *Id.* at 1162 (citations omitted).

In passing the Internet Tax Freedom Act of 1998, Congress provided for such national regulation. 47 U.S.C. §§ 151 - 1101 et seq. The Internet Tax Freedom Act creates a moratorium prohibiting individual states from imposing internet access taxes on ISPs. 47 U.S.C. § 1101(a)(1). The major exception to this prohibition, however, is if an ISP does not offer filtering software to the consumer, it can be taxed. 47 U.S.C. § 1101(d). Section 230 of 47 U.S.C. states "it is the policy of the United States . . . (4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material." Specifically, 47 U.S.C. § 230 states in relevant part:

> (d) Obligations of interactive computer service
>
> A provider of interactive computer service shall, at the time of entering an agreement with a customer for the provision of interactive computer service and in a manner deemed appropriate by the provider, notify such customer that parental control protections (such as computer hardware, software, or filtering services) are commercially available that may assist the customer in limiting access to material that is harmful to minors. Such notice shall identify, or provide the customer with access to information identifying, current providers of such protections.
> . . . .
> (e) Effect on other laws
> . . . .
> (3) State law

> *Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section.* No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

47 U.S.C. § 230(d) & (e)(3) (emphasis added).

The Internet Tax Freedom Act makes clear that state regulation of the Internet is not a *per se* violation of the Commerce Clause as Plaintiffs have asserted. Rather, it is explicitly allowed so long as it is consistent with federal law. The Internet Tax Freedom Act requires that ISPs notify each of its customers about the availability of filtering software. 47 U.S.C. § 230. The state of Utah requires that "[u]pon request by a consumer," an ISP must actually provide filtering software. Utah Code Ann. § 76-10-1231(1)(a). An ISP complies with Utah's state regulation, however, by simply referring consumers "to a third party that provides filtering software" when such software is requested; in other words, notifying the consumer about the availability of filtering software upon the consumer's request. Utah Code Ann. § 76-10-1231(3)(a)(ii). Thus, § 76-10-1231(1) is wholly consistent with the national regulation and imposes no additional burdens.[2]

With regard to subsection (7) of § 76-10-1231, which provides for annual testing of the effectiveness of each filtering service, the Court's position has not changed. First, the purpose of

---

[2]Plaintiffs contend that § 1231 is an invalid regulation of interstate commerce because, under the balancing test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), "the burdens on interstate commerce imposed by [§ 1231] exceed any local benefits conferred by the statute." *Johnson*, 194 F.3d at 1161. Although Plaintiffs concede that the burdens imposed by § 1231 are minimal, they contend that there is absolutely no local benefit because a filtering requirement is already imposed by federal law. The Internet Tax Freedom Act provides that all ISPs must offer consumers a filtering service or be subject to state tax. The state of Utah has determined, however, that it will forgo the collection of any taxes and instead require that all Utah based ISPs offer filtering in a manner that is consistent with federal law. This is the local benefit that § 1231 provides. Having already found that § 1231 does not burden interstate commerce, the *Pike* balancing test is satisfied.

this subsection is not to impose a statutory minimum standard of effectiveness that all filtering services must meet to be sold in Utah. It is simply a consumer awareness measure, allowing the public to know what type of material will be blocked by a given software. Second, as previously stated, the Division for Consumer Protection has yet to determine how to implement this provision and has not made any determination regarding the testing criteria that will be imposed. Any challenge to subsection (7) is, therefore, premature, and does not meet the "case or controversy" requirement of Article III.

Accordingly, Plaintiffs IPNS of Utah, LLC, and RigidTech.com, Inc., or any other Plaintiffs in this lawsuit, lack standing to challenge Utah Code § 1231.

## II.     Utah Code § 1205

Utah Code § 1205 prohibits a person from "inducing" an end-user to receive pornographic material as a condition of a sale for other items.[3] Plaintiffs argue that this statute, which imposes criminal penalties, is vague and undefined. For example, Plaintiffs ask whether under § 1205 an ISP could be charged for innocently allowing a piece of spam with pornographic material to get through its filtering service? Plaintiffs' Memo in Support, pg. 7, Dkt. No. 65. Similarly Plaintiffs ask whether a web hosting company, which hosts both sexual and non-sexual content on the same web servers, could be charged under § 1205 for mixing both "pornographic"

---

[3]

> (1) A person is guilty of inducing acceptance of pornographic material when he knowingly:
>
> (a) requires or demands as a condition to a sale, allocation, consignment, or delivery for resale of any newspaper, magazine, periodical, book, publication, or other merchanise that the purchaser or consignee receive any pornographic material or material reasonably believed by the purchaser or consignee to be pornographic; or
> (b) denies, revokes, or threatens to deny or revoke a franchise, or to impose any penalty, financial or otherwise, because of the failure or refusal to accept pornographic material or material reasonably believed by the purchaser or consignee to be pornographic.

material and non-pornographic material on the same web-server? *Id.* The vagueness of this statute, Plaintiffs contend, has the effect of chilling otherwise protected speech in violation of the First Amendment.

But as the Court has previously held, "the statute on its face is clear." Order, p. 15, Nov. 28, 2007, Dkt. No. 63. Section 1205 explicitly states that a person is guilty under this provision when he knowingly requests as a condition to an underlying sale that another accept pornographic material, or when he denies doing business with another because of that party's refusal to accept pornographic material. Utah Code Ann. § 1205. This provision criminalizes purposeful inducement. No Plaintiff before the Court has alleged that they require acceptance by end-users of pornographic material as a condition of sale or to avoid a penalty under a sales contract. Neither have they alleged that they plan to do so in the future. Accordingly, all Plaintiffs lack standing to challenge § 1205 on First Amendment or any other grounds.[4]

### III.   Utah Code § 1206

Utah Code § 76-10-1206 prohibits ISPs, content providers, and web hosts from distributing material that is "harmful to minors" on the Internet. In its November 28, 2007 Order, the Court dismissed Plaintiffs The King's English Bookstore and Sam Weller's Zion Bookstore from challenging § 1206, or any other provision of the Utah Harmful to Minors Act, for lack of standing.[5] The Court found that these two Plaintiffs failed to sufficiently plead or

---

[4] Plaintiffs also challenge § 1205 on Commerce Clause grounds as an improper state regulation of interstate commerce. Having found, however, that no Plaintiff has alleged that they knowingly induce the acceptance of material that could reasonably be deemed to be "pornographic," they all lack standing to challenge § 1205.

[5] The Court did find that eight other Plaintiffs (The Sexual Health Network, Inc., Comic Book Legal Defense Fund, Association of American Publishers, Inc., Publisher's Marketing Association, Freedom to Read Foundation, American Booksellers Foundation for Free Expression, ACLU of Utah, and Nathan Florence) have standing to challenge § 1206.

demonstrate how any of the materials they produce or distribute could be deemed "harmful to minors." Support for this conclusion was evidenced by the fact that the Utah Harmful to Minors Act has been in force as applied to brick and mortar bookstores since 1973. Not once, however, during this thirty-five year period, has either The King's English or Sam Weller's – or any other similarly situated bookstore in the state of Utah – been prosecuted under the Act.

Further missing from Plaintiffs' Amended Complaint was any credible allegation that this provision has actually had a chilling effect on their speech. There was nothing in their amended pleadings to show that either Plaintiff had refrained from advertising, selling, or otherwise distributing materials they otherwise would but for the amended Act. Neither was there anything sufficient in the pleadings to show that these Plaintiffs plan to advertise or sell in the near future material that could be deemed "harmful to minors."

Plaintiffs argue that in reaching this decision, the Court misapprehended important facts and legal distinctions between brick and mortar bookstores and the Internet. In the context of a brick and mortar bookstore, the retailer deals face-to-face with the prospective customer. If the prospective customer is a minor and the work sought to be purchased is inappropriate, the retailer can dissuade the minor from purchasing the work or refuse to sell it to him or her. However, if one posts a cover or an excerpt on the Internet, there is no practical way to determine whether the material is viewed by a minor.

Similarly, the prospective clientele for an internet distributor is much greater than that for a brick and mortar bookstore. Under § 1206, material is harmful to minors if, among other things, it "is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors." Utah Code Ann. § 1206(4)(b). Plaintiffs contend that because of the apparent local nature of the "harmful to minors" standard, they have

a legitimate concern that what may be appropriate for a minor in Salt Lake City, may not be appropriate for a minor in a more conservative county in Utah in which their web sites are viewed.

Furthermore, Plaintiffs claim that the concept of "taken as a whole," required by § 76-10-1201(4)(a) and (c), is very different in the context of the Internet. A book cover, illustrations or excerpt shown on the Internet may well be the "whole," and thus judged independently and not in the context of the entire book. Because Plaintiffs advertise books whose covers contain images which they allege could be deemed "harmful to minors," they contend that they have a legitimate fear of prosecution under the Act and thus have standing to challenge § 1206.

Plaintiffs cite *ACLU v. Johnson*, 194 F.3d 1149 (10th Cir. 1999), for the proposition that the injury-in-fact requirement of standing is met when "the law is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution." *Id.* at 1154 (citing *Virginia v. American Booksellers Assoc.*, 484 U.S. 383, 392 (1988). It is not necessary, Plaintiffs contend, to demonstrate that they have "refrained from constitutionally protected conduct or actually violated the law" to establish standing. *Id.* at 1154.

But again, Plaintiffs The King's English and Sam Weller's have not demonstrated that they currently distribute material that is harmful to minors or that they plan to distribute such material in the future. They have not shown that "the law is aimed" at them. Although in cases involving free speech rights the requirements for standing can be somewhat lessened, *Sec'y of State of Maryland v. Munson*, 467 U.S. 947, 956 (1984), Plaintiffs must still show – "at an irreducible minimum" – a realistic possibility of being prosecuted under the Utah Harmful to

Minors Act. *American Booksellers*, 484 U.S. at 392. A mere notion of possible future prosecution is not enough.

Plaintiffs list in their amended pleadings a number of books they sell that contain sexual content, which they allege could be deemed harmful to minors when advertised on the Internet. For example, the cover of Margaret Atwood's novel Oryx and Crake, features two nude female torsos joined as one. Other examples include advertisements for D.H. Lawrence's Lady Chatterly's Lover, Gustave Flaubert's Madame Bovary, and Vladimir Nabokov's Lolita. But none of the books listed by Plaintiffs have ever been found by a court in the State of Utah to be material harmful to minors. Neither have the Plaintiffs themselves ever treated these books as such material. In Utah, magazine and video shops that carry material harmful to minors cordon off sections of their store which contain the objectionable material. Neither The King's English nor Sam Weller's has such a cordoned section, meaning they obviously did not regard the books being cited in the Amended Complaint as material harmful to a minor prior to the filing of this lawsuit. Plaintiffs' current attempt to now categorize these books as such material is mere speculation.

Although Plaintiffs The King's English and Sam Weller's arguments with regard to the constitutionality of § 1206 may have some merit, these attacks are beyond the scope of the threshold question currently before the Court. Before Plaintiffs can attack the constitutionality of § 1206, they must demonstrate standing. They must show that they currently distribute, or plan to distribute in the near future, material that is harmful to minors. This they have not done. Accordingly, Plaintiffs The King's English and Sam Weller's lack standing to challenge § 1206.

## Conclusion

For the reasons stated above, Plaintiffs' Motion for Reconsideration or, In the Alternative, for Leave to File a Second Amended Complaint is DENIED.

IT IS SO ORDERED.

DATED this 8th day of August, 2008.

*[signature]*
Dee Benson
United States District Judge